IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LORD ABBETT AFFILIATED FUND, INC., *et al.*, Individually and on Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>   v.<br><br>NAVIENT CORPORATION, JOHN F. REMONDI, SOMSAK CHIVAVIBUL, WILLIAM M. DIEFENDERFER, III, ANN TORRE BATES, DIANE SUITT GILLELAND, LINDA MILLS, BARRY A. MUNITZ, STEVEN L. SHAPIRO, JANE J. THOMPSON, BARRY L. WILLIAMS, CREDIT SUISSE SECURITIES (USA) LLC, DEUTSCHE BANK SECURITIES INC., J.P. MORGAN SECURITIES LLC, RBC CAPITAL MARKETS, LLC, BARCLAYS CAPITAL INC., GOLDMAN, SACHS & CO., MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, RBS SECURITIES INC., and WELLS FARGO SECURITIES, LLC,<br><br>               Defendants. | C.A. No. 16-112-GMS |

**OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6) BY NAVIENT CORPORATION AND THE INDIVIDUAL DEFENDANTS**

**OF COUNSEL:**

**LATHAM & WATKINS LLP**

Peter A. Wald (*pro hac vice*)
505 Montgomery Street
Suite 2000
San Francisco, CA 94111
Tel: 415.391.0600

**RICHARDS LAYTON & FINGER, P.A.**

Kelly E. Farnan (#4395)
farnan@rlf.com
One Rodney Square
920 N. King Street
Wilmington, DE  19801
Tel: 302.651.7700

Abid R. Qureshi (*pro hac vice*)
Christopher S. Turner (*pro hac vice*)
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200

Christopher R. Harris (*pro hac vice*)
885 Third Avenue
New York, NY 10022
Tel: 212.906.1200

*Counsel for Navient Corporation and the
Individual Defendants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. ii

PRELIMINARY STATEMENT ...........................................................................1

BACKGROUND ....................................................................................................2

ARGUMENT..........................................................................................................6

I.      PLAINTIFFS' PUZZLE PLEADING MUST BE DISMISSED ...................6

II.     PLAINTIFFS FAIL TO STATE CLAIMS UNDER THE EXCHANGE ACT ...........7

      A.     The Amended Complaint Fails To Plead Falsity ................................7

             1.     Plaintiffs Fail To Plead The Falsity Of Statements Concerning Navient's Allowance For Loan Losses ........................................8

             2.     Plaintiffs Fail To Plead The Falsity Of Statements Concerning Navient's Compliance Efforts.......................................15

             3.     Plaintiffs Fail To Plead The Falsity Of Statements Concerning Navient's Credit Facilities .........................................17

      B.     The Amended Complaint Fails To Plead Scienter .............................18

             1.     Plaintiffs' "Fraud By Hindsight" And "Should Have Known" Allegations Are Insufficient As A Matter Of Law ...................19

             2.     Plaintiffs' Confidential Witness Allegations Are Insufficient As A Matter Of Law..........................................................20

             3.     Plaintiffs' Motive Allegations Are Insufficient As A Matter Of Law .........................................................................21

III.    PLAINTIFFS FAIL TO STATE CLAIMS UNDER THE SECURITIES ACT ........23

      A.     Plaintiffs' Securities Act Claims Sound In Fraud.............................23

      B.     The Amended Complaint Fails To Plead Falsity .............................24

CONCLUSION .....................................................................................................25

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*In re Advanta Corp. Secs. Litig.*,
   180 F.3d 525 (3d Cir. 1999)................................................................15

*In re Aetna, Inc. Sec. Litig.*,
   617 F.3d 272 (3d Cir. 2010)................................................7, 14, 15, 16

*Affiliated Ute Citizens of Utah v. United States*,
   406 U.S. 128 (1972)................................................................13

*In re AirGate PCS, Inc. Sec. Litig.*,
   389 F. Supp. 2d 1360 (N.D. Ga. 2005)................................................25

*AJZN, Inc. v. Yu*,
   No. 13-149, 2015 WL 331937 (D. Del. Jan. 26, 2015) ....................12, 18

*In re Alcatel Sec. Litig.*,
   382 F. Supp. 2d 513 (S.D.N.Y. 2005)................................................7, 25

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................25

*Backhaus v. Streamedia Commc'ns, Inc.*,
   No. 01-4889, 2002 WL 1870272 (S.D.N.Y. Aug. 14, 2002)................25

*Baker v. MBNA Corp.*,
   No. 05-272, 2007 WL 2009673 (D. Del. July 6, 2007)................20

*Belmont v. MB Inv. Partners, Inc.*,
   708 F.3d 470 (3d Cir. 2013)................................................18

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997)................................................13, 14

*In re CIT Grp., Inc. Sec. Litig.*,
   349 F. Supp. 2d 685 (S.D.N.Y. 2004)................................................12

*City of Edinburgh Council v. Pfizer, Inc.*,
   754 F.3d 159 (3d Cir. 2014)................................................13

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
   752 F.3d 173 (2d Cir. 2014)................................................16

ii

*In re Digital Island Sec. Litig.*,
   357 F.3d 322 (3d Cir. 2004)..................................................................18

*In re DVI, Inc. Sec. Litig.*,
   639 F.3d 623 (3d Cir. 2011)..................................................................13

*In re Fairway Group Hldgs. Corp. Sec. Litig.*,
   No. 14-950, 2015 WL 4931357 (S.D.N.Y. Aug. 19, 2015)......................25

*Fait v. Regions Fin. Corp.*,
   655 F.3d 105 (2d Cir. 2011)..............................................................9, 11

*In re Fannie Mae 2008 Sec. Litig.*,
   742 F. Supp. 2d 382 (S.D.N.Y. 2010).....................................................9

*Gaer v. Educ. Mgmt. Corp.*,
   No. 10-1061, 2011 WL 7277447 (W.D. Pa. Aug. 30, 2011)....................17

*Globis Cap. Partners, L.P. v. Stonepath Grp., Inc.*,
   241 F. App'x 832 (3d Cir. 2007)...........................................................22

*Gold v. Ford Motor Co.*,
   577 F. App'x 120 (3d Cir. 2014)...........................................................18

*In re Great Atl. & Pac. Tea Co., Inc. Sec. Litig.*,
   103 F. App'x 465 (3d Cir. 2004)...........................................................22

*GSC Partners CDO Fund v. Washington*,
   368 F.3d 228 (3d Cir. 2004).............................................................1, 19

*In re Hutchinson Tech., Inc., Sec. Litig.*,
   536 F.3d 952 (8th Cir. 2008)................................................................16

*Inst. Invs. Grp. v. Avaya, Inc.*,
   564 F.3d 242 (3d Cir. 2009)..........................................................*passim*

*Johansson v. Ferrari*,
   No. 14-42, 2015 WL 5000848 (D. Del. Aug. 20, 2015)....................12, 20

*Klein v. Autek Corp.*,
   147 F. App'x 270 (3d Cir. 2005)...........................................................22

*In re Lions Gate Entm't Corp. Sec. Litig.*,
   165 F. Supp. 3d 1 (S.D.N.Y. 2016).......................................................16

*Loos v. Immersion Corp.*,
   762 F.3d 880 (9th Cir. 2014)................................................................16

RLF1 15772240v.1

*In re Lord Abbett Mut. Funds Fee Litig.*,
    553 F.3d 248 (3d Cir. 2009)........................................................................1

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011)..................................................................................17

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
    540 F.3d 1049 (9th Cir. 2008) .............................................................20, 21

*Meyer v. Greene*,
    710 F.3d 1189 (11th Cir. 2013) ...............................................................16

*Monk v. Johnson & Johnson*,
    No. 10-4841, 2011 WL 6339824 (D.N.J. Dec. 19, 2011)..............................22

*In re Morgan Stanley Info. Fund Sec. Litig.*,
    592 F.3d 347 (2d Cir. 2010).....................................................................17

*In re NAHC, Inc. Sec. Litig.*,
    306 F.3d 1314 (3d Cir. 2002).....................................................................9

*Okla. Firefighters Pension & Ret. Sys. v. Student Loan Corp.*,
    951 F. Supp. 2d 479 (S.D.N.Y. 2013)........................................................12

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
    135 S. Ct. 1318 (2015).............................................................................11

*Oran v. Stafford*,
    226 F.3d 275 (3d Cir. 2000)................................................................13, 17

*Patel v. Parnes*,
    253 F.R.D. 531 (C.D. Cal. 2008)................................................................7

*Percoco v. Deckers Outdoor Corp.*,
    No. 12-1001, 2013 WL 3584370 (D. Del. July 8, 2013)...............................20

*Pollio v. MF Glob., Ltd.*,
    608 F. Supp. 2d 564 (S.D.N.Y. 2009).........................................................22

*Ret. Sys. v. Chubb Corp.*,
    394 F.3d 126 (3d Cir. 2004)................................................................ *passim*

*In re Sanofi Sec. Litig.*,
    155 F. Supp. 3d 386 (S.D.N.Y. 2016).........................................................10

*Sapir v. Averback*,
    No. 14-7331, 2016 WL 554581 (D.N.J. Feb. 10, 2016) ...............................22

iv

*Seaman v. Cal. Bus. Bank,*
    No. 13-2031, 2013 WL 5890726 (N.D. Cal. Oct. 30, 2013) ...............................12

*SEPTA v. Orrstown Fin. Servs., Inc.,*
    No. 1:12-993, 2015 WL 3833849 (M.D. Pa. June 22, 2015)....................9, 10, 11, 14

*Shapiro v. UJB Fin. Corp.,*
    964 F.2d 272 (3d Cir. 1992).................................................................................10

*Starr Invs. Cayman II, Inc. v. China MediaExpress Hldgs., Inc.,*
    No. 11-233, 2014 WL 4180331 (D. Del. Aug. 21, 2014).......................................19

*In re Suprema Specialties, Inc. Sec. Litig.,*
    438 F.3d 256 (3d Cir. 2006).....................................................................20, 23, 24

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    127 S. Ct. 2499 (2007)........................................................................................19

*In re Tellium Inc., Sec. Litig.,*
    No. 02-5878, 2005 WL 1677467 (D.N.J. June 30, 2005).......................................6

*Tongue v. Sanofi,*
    816 F.3d 199 (2d Cir. 2016).................................................................................11

*United States v. Schiff,*
    602 F.3d 152 (3d Cir. 2010).................................................................................13

*In re Wachovia Equity Sec. Litig.,*
    753 F. Supp. 2d 326 (S.D.N.Y. 2011)....................................................................9

*Weiner v. Quaker Oats Co.,*
    129 F.3d 310 (3d Cir. 1997).................................................................................12

*In re Wilmington Trust Sec. Litig.,*
    29 F. Supp. 3d 432 (D. Del. 2014)........................................................................25

*In re Wilmington Trust Sec. Litig.,*
    852 F. Supp. 2d 477 (D. Del. 2012)...................................................................6, 25

*Winer Family Tr. v. Queen,*
    503 F.3d 319 (3d Cir. 2007)...................................................................................1

## STATUTES

15 U.S.C. § 77k(a) ...........................................................................................24

15 U.S.C. § 78u–5(i)(1)(A) ................................................................................14

15 U.S.C. § 78u–4(b)(1) ..............................................................................7, 12, 13

15 U.S.C. § 78u-4(b)(2) ............................................................................................................... 18

15 U.S.C. § 78u-5(c) ................................................................................................................... 14

RLF1 15772240v.1

Pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), and the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737, (the "PSLRA" or the "Reform Act"), Defendants Navient Corporation ("Navient" or the "Company")[1] and the individual Defendants ("Individual Defendants," and collectively with Navient, "Defendants"), respectfully submit this Opening Brief in Support of their Motion to Dismiss the Consolidated Amended Complaint ("CAC" or "Complaint").

## PRELIMINARY STATEMENT

Securities law claims are serious—with potentially crippling effects on a company and its executives.  Accordingly, the PSLRA sets strict pleading requirements to limit "the practice of filing lawsuits against issuers of securities in response to any significant change in stock price, regardless of defendants' culpability." *Winer Family Tr. v. Queen*, 503 F.3d 319, 326 (3d Cir. 2007).[2]  Despite having had five months to investigate and develop their claims after being named Lead Plaintiffs, the Lord Abbett funds ("Plaintiffs") filed a 135-page puzzle pleading that fails to state, with particularity, (1) actionable misrepresentations, and (2) facts supporting a strong inference of scienter.

The Complaint does not allege facts showing which specific statements were false or misleading—or how, why, and in what manner those statements were false or misleading. Instead, Plaintiffs trot out a parade of lengthy quotes from public statements made by Defendants

---

[1] Defendants respectfully submit herewith a Declaration of Christopher S. Turner in support ("Turner Declaration" or "Turner Decl."), exhibits to which are designated "Ex. __." This Brief incorporates the meanings of "Navient" and "Company" in Ex. 2 (2014 Form 10-K).

[2] Lead Plaintiffs know this well, having put this issue to the Third Circuit. *See In re Lord Abbett Mut. Funds Fee Litig.*, 553 F.3d 248, 250 (3d Cir. 2009) ("Congress enacted the PSLRA to prevent the filing of 'strike suits'—abusive class actions which are brought with the hope that the expense of litigation may force defendants to settle despite the actions' lack of merit."); *see also GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 246 (3d Cir. 2004) ("One of Congress' objectives in enacting the PSLRA was 'to provide a filter at the earliest stage (the pleading stage) to screen out lawsuits that have no factual basis.'").

during the Class Period, and summarily assert that these statements as a group were false or misleading for one or more of five listed reasons, without linking those reasons to individual statements. This is precisely the kind of "puzzle pleading" that courts consistently have rejected. *See* Sections I, III, *infra*. Furthermore, Plaintiffs fail to allege facts sufficient to show that these statements—many of which are opinions, puffery, or forward-looking—were false when made. *See* Sections II.A, III.B, *infra*. These basic pleading failures are fatal to Plaintiffs' claims.

Plaintiffs' securities fraud claims fail for an additional reason: the Complaint does not set forth particularized facts giving rise to a strong inference of scienter. Plaintiffs fail to cite any contemporaneous emails, documents, or other materials even suggesting, much less showing that any Defendant knew, or was reckless in not knowing that the alleged misrepresentations were false or misleading when made. Plaintiffs do not source any allegations to any confidential witness who engaged or had contact with any Individual Defendant. Nor do Plaintiffs allege stock sales by any Individual Defendant, or any other facts suggesting a plausible motive for Defendants fraudulently to prop up the price of Navient securities. Such alleged facts, particularized and supported, are required to sustain serious claims of securities fraud—and they are wholly absent here. *See* Section II.B, *infra*. Dismissal with prejudice is warranted.

## BACKGROUND

### Navient's Business

Navient is a loan management, servicing, and asset recovery company formed in 2014 when it was spun off from Sallie Mae. CAC ¶¶ 10-11, 79-81. Though it no longer originates student loans, Navient holds significant portfolios of both Federal Family Education Loan Program ("FFELP") loans and Private Education Loans ("PELs"). *Id.* ¶¶ 10, 12, 79-81, 104; Ex. 2 at 5-6. Navient also acts as a loan servicer both for its own loans and loans owned by the Department of Education ("DOE"), banks, credit unions, and others, and provides asset recovery

2

services for various public and private entities.  CAC ¶¶ 10-11.  Navient's operating results are driven by various factors, including: net interest from its student loan portfolios; revenues and expenses from its service business; gains and losses on loan sales and debt purchases; and its allowance for loan losses ("ALL" or "loan loss reserve").  *Id.* ¶ 13.  Navient's stock is publicly traded.  On or around November 6, 2014, Navient offered $500 million in principal amount of 5.000% Senior Notes due 2020 and $500 million in principal amount of 5.875% Senior Notes due 2024.  *Id.* ¶ 276.  On March 27, 2015, Navient offered $500 million in principal amount of 5.875% Senior Notes due 2021.  *Id.*

**Allowance for Loan Losses**

Under Generally Accepted Accounting Principles ("GAAP"), Navient accounts for loan losses using the "incurred loss model."  *See id.* ¶¶ 207-08 (citing Accounting Standards Codifications ("ASC") 310, 450).  A firm must (and may only) reserve for incurred losses that, as of the balance sheet date, are "probable" and "can be reasonably estimated."  *Id.* ¶ 210.  Though setting the ALL is a matter of judgment, lenders measuring incurred loss typically place reliance on historical data, in keeping with ASC 450, which limits accrual for a loss contingency to "[i]nformation available prior to the issuance of [the] financial statements."  *Id.*

Navient maintains an allowance for loan losses based on a projection of credit losses already "incurred" (*i.e.,* already existing) in the portfolio at a given reporting date.  Ex. 2 at F-15.  Navient uses a model to estimate the likelihood that a loan receivable may progress through the various stages of delinquency and ultimately charge off.  *Id.* at F-16.  Navient determines the collectability of its PEL portfolio by evaluating certain risk characteristics such as school type, credit score (FICO), existence of a cosigner, loan status, and loan seasoning.  *Id.*  To estimate probable credit losses incurred, Navient uses its historical experience concerning customer payment behavior in light of these key credit quality indicators, and incorporates management

3

expectations regarding macroeconomic and collection procedure factors. *Id.* The model starts with the most recent 12 months of actual collection experience and applies expected macroeconomic conditions and collection procedure changes to estimate expected losses. *Id.* Navient then applies default and collection rate projections to each category of loan type and payment status in deriving a quantitative estimate of the allowance. *Id.* at F-17. Finally, Navient adjusts the quantitative allowance for significant qualitative factors where applicable, in order to arrive at its overall allowance for loan losses. *Id.*

**Disclosures**

Throughout the Class Period, Navient made various timely disclosures of positive and negative developments for the Company. Navient timely disclosed its interactions with federal regulators. On May 9, 2014, in its first quarterly report after completion of the spin-off, Navient disclosed that regulators were investigating Sallie Mae Bank for issues relating to customer billing disclosures and certain late fees, including on loans to members of the military. CAC ¶ 99. At the same time, Navient disclosed that Navient Solutions, Inc. ("NSI") had received investigative demands from the Consumer Financial Protection Bureau ("CFPB"). *Id.* ¶ 98. Navient continued to update shareholders about these issues in subsequent disclosures. *Id.* ¶¶ 113, 192. These disclosures preceded, and were consistent with the CFPB's October 2014 report concerning private student loan complaints, including complaints against Navient, *id.* ¶¶ 46, 118, and the CFPB's notification of potential legal action against NSI in August 2015, *id.* ¶ 186.

Navient also made timely disclosures regarding its collections contracts. Navient disclosed in the 2014 Form 10-K that its subsidiary, Pioneer, had not received new accounts from the DOE after expiration of its contract. *Id.* ¶ 140. Navient's CEO, Jack Remondi, had addressed this issue in the prior quarter's earnings call. Ex. 1 (Oct. 16, 2014 Earnings Call Tr.) at 13-14. The DOE announced its decision and reasons for not renewing Pioneer's contract in

4

February 2015, and Navient continued to discuss this issue on its next earnings call.  CAC ¶¶ 156-57, 169.

Navient also made timely disclosures regarding its PEL portfolio.  In its Q1 2015 earnings call, Mr. Remondi shared with analysts certain trends that Navient had observed in the education sector.  Ex. 3 (Apr. 22, 2015 Earnings Call Tr.) at 2-3.  Over the next quarter, Navient determined that its PEL portfolio was not performing as expected and required an increase in its loan loss provision, which Navient disclosed and explained in its Q2 2015 10-Q.  CAC ¶ 177.

Finally, Navient made timely disclosures regarding its credit facilities.  On December 22, 2015, the Federal Home Loan Bank of Des Moines ("FHLB-DM") notified a Navient subsidiary that its available credit would be reduced, which Navient disclosed less than a week later.  *Id.* ¶ 194.  Navient also told investors why it believed the reduction occurred.  *Id.* ¶ 195; Ex. 4 (Dec. 28, 2015 Form 8-K) at 2.  Following further review, Navient provided investors with a more definitive analysis of the reasons for the reduction.  CAC ¶ 195; Ex. 5 (2015 Form 10-K) at 92.

**Procedural History and Plaintiffs' Complaint**

On February 11, 2016, the first complaint was filed, followed by two substantially similar complaints that same month.  On April 26, 2016, the various plaintiff groups stipulated that Plaintiffs should serve as Lead Plaintiffs, which this Court approved.  D.I. 32.  On September 28, 2016, five months after the Lead Plaintiff stipulation, Plaintiffs filed their 135-page Complaint, asserting claims under the Exchange Act against Navient and its CEO and CFO, and asserting claims under the Securities Act (based on Navient's bond offerings) against these same Defendants, plus Navient's directors and underwriters of the Navient bond offerings.  Defendants now move to dismiss this Complaint with prejudice.

## ARGUMENT

### I.     PLAINTIFFS' PUZZLE PLEADING MUST BE DISMISSED

Courts in this Circuit and others routinely dismiss complaints that employ "shotgun" or "puzzle" pleading techniques and fail to tie alleged misstatements to the specific reasons why they are false or misleading.  *See, e.g., In re Tellium Inc., Sec. Litig.*, No. 02-5878, 2005 WL 1677467, at *15 n.14 (D.N.J. June 30, 2005) ("The Court would like to join the chorus of courts that has 'repeatedly lamented plaintiffs' counsels' tendency to place the burden on the reader to sort out the statements and match them with the corresponding adverse facts to solve the "puzzle" of interpreting Plaintiffs' claims.'").  Serially quoting at length from public statements made by defendants, and then offering a litany of reasons why any of those statements might be untrue, does not satisfy the "notice pleading" requirements of Rule 8—much less the heightened pleading requirements of Rule 9(b) and the PSLRA.  *In re Wilmington Trust Sec. Litig.*, 852 F. Supp. 2d 477, 490-91 (D. Del. 2012) (dismissing Exchange Act and Securities Act claims where "plaintiffs have not specifically identified the reason or reasons why each statement is false or misleading" and instead cite "to a laundry list of reasons why a statement could be untrue").

The Complaint suffers this exact flaw: a parade of alleged misstatements is followed by a single paragraph broadly and summarily asserting falsity.  For example, Paragraph 143 states:

> The statements in ¶¶ 86-97, 103-117, 119-42 concerning Navient's financial results, Private Education Loan segment, loan loss provisions, customer approach, risk-management practices, and the state of the Company's credit facilities were false and misleading when made because the Exchange Act Defendants knew or recklessly disregarded [five categories of information].

Here, Plaintiffs cite approximately **fifty** paragraphs of alleged misstatements regarding **six** broad aspects of Navient's business, and argue that they are false and misleading for any of **five** reasons.  CAC ¶ 143.  Plaintiffs then repeat this blunderbuss approach **nine** more times.  *See id.* ¶¶ 150, 154, 160, 164, 173, 175, 191, 287, 297.  None of those purported reasons is tied to any

6

specific alleged misstatement.  Instead, the Complaint forces Defendants and the Court to guess

which explanation of falsity relates to which alleged misstatement(s).  This is wholly improper—

as courts consistently have held, using language that could have been written for this case:

> Plaintiffs list various statements—often setting forth lengthy quotations from various releases by Defendants' officers and securities analysts—then follow each with a similar (in most cases identical) laundry list of "specific" reasons why the statements are allegedly false. . . . Plaintiffs neglect to make it clear what portion of each quotation constitutes a false representation, or which statements link up with which issues in the laundry list, placing the burden on the Court to sort out the alleged misrepresentations and then match them with the corresponding adverse facts. This method is deficient under the pleading standards.

*In re Alcatel Sec. Litig.*, 382 F. Supp. 2d 513, 534–35 (S.D.N.Y. 2005); *see also Patel v. Parnes*,

253 F.R.D. 531, 552-53 (C.D. Cal. 2008) (plaintiffs cannot "place the burden [] on the reader to

sort out the statements and match them with the corresponding adverse facts to solve the 'puzzle'

of interpreting Plaintiffs' claims").  Plaintiffs must allege how and why each misstatement is

false.  15 U.S.C. § 78u-4(b)(1).  The Complaint does not do so and must be dismissed.

## II.    PLAINTIFFS FAIL TO STATE CLAIMS UNDER THE EXCHANGE ACT

"Federal securities fraud litigation is governed by the [PSLRA] which Congress enacted

'[a]s a check against abusive litigation by private parties . . . .'"  *In re Aetna, Inc. Sec. Litig.*, 617

F.3d 272, 277 (3d Cir. 2010).  The Complaint fails to satisfy the "two exacting and distinct

pleading requirements for securities fraud actions:"  stating with particularity (1) actionable

misrepresentations, and (2) facts supporting a strong inference of scienter.  *Id.* at 277-78.[3]

### A.    The Amended Complaint Fails To Plead Falsity

The misrepresentations alleged in the Complaint fall into three categories: (1) Navient's

allowance for loan losses and related financial metrics, (2) Navient's "compliance culture," and

---

[3] "Rule 9(b)'s particularity requirement 'is comparable to and effectively subsumed by the requirements of [§ 78u–4(b)(1) of] the PSLRA.'"  *Inst. Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009).

(3) Navient's credit facilities.   Plaintiffs fail to plead—with particularity or otherwise—any actionably false statement by any Defendant.

### 1.   Plaintiffs Fail To Plead The Falsity Of Statements Concerning Navient's Allowance For Loan Losses

Plaintiffs repeatedly allege that Navient violated the securities laws by reporting an artificially low allowance for loan losses.  *See* CAC ¶¶ 89, 92, 95-97, 104, 108-10, 114-15, 119, 123-24, 127, 132, 138-39, 159, 171, 174, 214-15.   But in doing so, Plaintiffs allege no facts demonstrating that the allowance was wrong—or that any statement about the allowance was false or misleading when made.   Plaintiffs' allegations amount to nothing more than the following assertion: because the loan loss provision increased in July 2015, it must have been "artificially low" in the prior periods.   As many courts have held, this is deeply and profoundly wrong—as a matter of GAAP accounting and as a matter of law.

### a.   Plaintiffs Fail To Allege Falsity Of Navient's Allowance For Loan Losses

As Plaintiffs acknowledge, Navient is required under GAAP to account for loan losses using the "incurred loss model."  *See* CAC ¶¶ 207-12 (citing ASC 310, 450).   For a loss to be "incurred" under ASC 450, it must be based on "an **existing** condition, situation, or set of circumstances," which causes the loss to be "probable" and "reasonably estima[ble]" **at the balance sheet date**.  *Id.* ¶¶ 208-10 (emphasis added).   An issuer must recognize losses as incurred when "loans had been impaired based on past events and conditions existing as of the date of the financial statements."  *Id.* ¶ 210.   Thus, if the provision increases from one quarter to the next—as Navient's did in Q2 2015—this means, by definition, that new losses were incurred in the then-current quarter, not prior quarters.   Absent restatement, an increase in the provision in Q2 2015 means that newly incurred losses belong in that period.  *See id.*   Navient has made no restatement, and in the six quarters following Q2 2015, its auditors have taken no exception to

8

the Company's allowance—reflecting their agreement that the losses were incurred in Q2 2015 and not earlier. *See, e.g.*, Ex. 2 at F-2, F-3; Ex. 5 at F-2, F-3.

Numerous courts in this Circuit and others have recognized this fundamental principle of GAAP accounting, and have held that a later-period reserve increase does not mean that earlier-period reserves were false. *See Fait v. Regions Fin. Corp.*, 655 F.3d 105, 113 (2d Cir. 2011) (rejecting claim that loan loss reserves were false simply because they were later raised); *SEPTA v. Orrstown Fin. Servs., Inc.*, No. 1:12-993, 2015 WL 3833849, at *23 (M.D. Pa. June 22, 2015) ("[T]he fact that a company's loan loss reserves are subsequently increased does not mean that the reserves were knowingly understated at some earlier time."); *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 361 (S.D.N.Y. 2011) ("[A] 'massive increase' to loan loss reserves 'is not, in itself, an indicator that the previous reserve levels were inadequate.'").

Because Plaintiffs have not alleged facts sufficient to show that Navient improperly estimated its incurred losses at given dates,[4] and instead make the hindsight claim that those estimates "must have been wrong" because estimates for later periods were larger, they have not alleged a GAAP violation. *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1330 (3d Cir. 2002) ("To be actionable, a statement or omission must have been misleading at the time it was made; liability cannot be imposed on the basis of subsequent events."); *In re Fannie Mae 2008 Sec. Litig.*, 742 F. Supp. 2d 382, 412 (S.D.N.Y. 2010) (dismissing claims related to allegedly

---

[4] Rather, as described in its SEC filings and *supra* at 3-4, Navient employed a robust model to estimate the probable credit losses incurred in its PEL portfolio at a given reporting date (*i.e.*, its allowance for loan losses). *See* Ex. 2 at F-16, F-17. Plaintiffs summarily assert that Navient fraudulently understated its allowance by failing to monitor and update credit quality indicators, evaluate risk characteristics, or consider the historical payment experiences of certain borrowers in determining its allowance. *See* CAC ¶ 215. Yet they fail to allege any particularized facts supporting these conclusory assertions—and wholly ignore the fact that Navient's model, as described in its filings, incorporates the very information that they allege Defendants failed to consider. *See supra* at 3-4; *see also* Ex. 2 at F-16, F-17.

9

inadequate reserves, as "GAAP makes clear . . . that reserves are required only for *current* impairments or liabilities as of the date of the financial statements at issue which meet the . . . conditions [of FAS 5].*"); see also Cal. Public Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 158 (3d Cir. 2004) (rejecting pleading of falsity by hindsight).

### b.  Plaintiffs Fail To Allege Falsity Of Statements Of Opinion Regarding Navient's Allowance For Loan Losses

In addition, the allowance for loan losses is a matter of significant judgment, and has long been recognized in this Circuit as a statement of opinion. *See Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 281 (3d Cir. 1992) ("All techniques [for calculating loan loss reserves] . . . require quantitative and qualitative analyses of the past and present status of loans . . . [and] [n]o matter what method is used, the economic judgments made in setting loan loss reserves can be validated only at some future date."). Accordingly, Navient consistently advised investors that "[t]he evaluation of Navient's allowance for loan losses is inherently subjective, as it requires estimates that may be subject to significant changes," Ex. 2 at 18; *see also id.* at 40, 96, F-13, and that its allowance is maintained "at a level that management **believes** is appropriate to cover probable losses inherent in the loan portfolio," *id.* at 18 (emphasis added).[5]

---

[5] Plaintiffs also fail to plead facts supporting the claim that Defendants did not believe their allowance for loan losses was determined in accordance with GAAP, and that their Sarbanes-Oxley ("SOX") certifications were true. CAC ¶¶ 66-69, 138-39, 214-15 (summarily asserting that Defendants "failed to adequately account for losses" and "failed to monitor and update credit quality indicators" for certain loans). GAAP is a complex set of accounting principles, the application of which typically requires significant judgment and as to which reasonable minds can (and do) differ; accordingly, statements of compliance with GAAP—particularly those addressing whether loan losses are sufficiently "estimable" and "probable" to be reserved—are statements of opinion. *See Shapiro*, 964 F.2d at 281 (describing the various techniques and judgments used to calculate loan loss reserves); *SEPTA*, 2015 WL 3833849, at *23 (identifying the loan loss reserve as a statement of "belief"). The SOX certifications provided by certain Defendants, *see* CAC ¶¶ 66-69, also are statements of opinion. *See In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 402-03 (S.D.N.Y. 2016) (dismissing claims based on opinion statements expressed in SOX certifications).

10

As the Supreme Court explained in *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, plaintiffs must do much more than assert that a statement of opinion is "wrong" in order to plead the falsity of that statement. 135 S. Ct. 1318, 1325 (2015). Unlike a fact, which "expresses certainty about a thing," "[a]n opinion is 'a belief[,] a view,' or a 'sentiment which the mind forms of persons or things.'" *Id.* Accordingly, statements of fact and statements of opinion are treated differently when assessing liability under the federal securities laws. *Id.* at 1325-26. Specifically, opinion statements may create liability **only** if "the speaker did not hold the belief she professed," "the supporting facts she supplied were untrue," or the speaker omits information that makes an affirmative opinion statement misleading to a reasonable investor. *Id.* at 1327, 1332.[6] These allegations were required to plead the falsity of opinion statements regarding loan loss reserves both prior to *Omnicare*, *see Fait*, 655 F.3d at 113, and after *Omnicare*, *see Tongue*, 816 F.3d at 209-10 (holding that *Omnicare* affirmed and amplified the standard in *Fait*). As a court within the Third Circuit recently explained:

> Under both *Omnicare* and established Third Circuit precedent, a company cannot offer an opinion that characterizes loan loss reserves as adequate when it *knows* that the reserves are inadequate because a reasonable investor could be influenced by a company hiding its financial status by failing to provide adequate loss reserves.

*SEPTA*, 2015 WL 3833849, at *23. The court then dismissed claims alleging inadequate loan loss reserves, finding that "Plaintiff has not alleged a factual basis supporting a reasonable inference that . . . Defendants did not believe that they were 'adequately reserved for potential losses.'" *Id.* Here too, no facts are alleged showing that any Defendant knew that the reserves were inadequate or did not hold the belief reflected in the reported allowance. *See* Section II.B,

---

[6] For omissions, a plaintiff must establish that the omitted facts "conflict with what a reasonable investor would take from the statement itself." *Tongue v. Sanofi*, 816 F.3d 199, 210 (2d Cir. 2016) (citing *Omnicare*, 135 S.Ct. at 1329). This "is no small task for an investor." *Id.*

11

*infra*.  Nor is anything alleged showing the falsity of facts supporting the allowance, or the omission of information that would have altered the reasonable investor's understanding of Defendants' statements concerning the allowance.  *See* Section II.A.1.c, *infra*.  Absent such allegations, Plaintiffs' claims regarding the allowance for loan losses fail as a matter of law.[7]

### c.  Plaintiffs Fail To Allege That Navient's Financial Statements Were Misleading By Omission

Plaintiffs fare no better with their claim that Navient's financial statements were rendered misleading by the failure to disclose that certain "borrowers who exited deferment during the Class Period had difficulty repaying their loans."  CAC ¶ 143(iii).[8]

First, Plaintiffs have shown no duty to speak about this subset of borrowers.  "When an allegation of fraud under section 10(b) is based upon a nondisclosure, there can be no fraud absent a duty to speak."  *Johansson v. Ferrari*, No. 14-42, 2015 WL 5000848, at *4 (D. Del. Aug. 20, 2015) (Sleet, J.) (citing *Weiner v. Quaker Oats Co.*, 129 F.3d 310, 315-16 (3d Cir.

---

[7] *Okla. Firefighters Pension & Ret. Sys. v. Student Loan Corp.*, 951 F. Supp. 2d 479, 497 (S.D.N.Y. 2013) (dismissing claims based on allowance for losses on student loans after finding that "plaintiffs allege no basis for concluding that [defendant]'s . . . reserves reflected anything other than management's opinion — based on a variety of subjective determinations — as to the likelihood and magnitude of future losses"); *Seaman v. Cal. Bus. Bank*, No. 13-2031, 2013 WL 5890726, at *5 (N.D. Cal. Oct. 30, 2013) (finding that plaintiffs had not sufficiently pled falsity of loan loss reserves because they did not sufficiently plead subjective knowledge that the reserves were inadequate); *In re CIT Grp., Inc. Sec. Litig.*, 349 F. Supp. 2d 685, 690-91 (S.D.N.Y. 2004) ("That defendants later decided to revise the amount of loan loss reserves that [they] deemed adequate provides absolutely no reasonable basis for concluding that defendants did not think reserves were adequate at the time . . . .").

[8] To the extent Plaintiffs contend that the omission of other information (*e.g.*, that Navient was misleading borrowers about rehabilitation programs, CAC ¶ 143(i), was engaged in improper servicing and collection practices, *id.* ¶ 143(ii), or was at risk of losing access to credit facilities, *id.* ¶ 143(v)) rendered its financial statements misleading, Plaintiffs have not alleged any facts connecting these alleged omissions to Navient's financial statements—much less any facts showing how, why, or to what extent these alleged omissions affected those financial statements. *See* 15 U.S.C. § 78u-4(b)(1) (requiring plaintiffs to allege "the reason or reasons why the statement is misleading"); *AJZN, Inc. v. Yu*, No. 13-149, 2015 WL 331937, at *2 (D. Del. Jan. 26, 2015) (Sleet, J.) (dismissing where plaintiffs failed to "set out the 'who, what, when, where and how' of the events at issue" to plead falsity).

1997)).[9]   As one might expect, the inability of borrowers to repay loans is a routine business

issue for Navient, and Navient's belief about that issue is incorporated—and reflected—in its

delinquency rates, allowance for loan losses, and earnings guidance.  *See* Ex. 2 at 96, F-16, F-17.

Plaintiffs have not alleged any duty to provide more detail regarding the loans in Navient's PEL

portfolio, or any difficulties that particular borrowers had in repaying their loans—nor have they

alleged what Navient was required to say in satisfaction of any such duty.[10]  *See generally* CAC.

Second, Plaintiffs have not alleged with particularity how any specific statements Navient

did make were rendered misleading by virtue of any alleged omissions.[11]   *City of Edinburgh*

*Council v. Pfizer, Inc.*, 754 F.3d 159, 166 (3d Cir. 2014) (requiring plaintiffs to specify "each

statement alleged to have been misleading" and "the reason or reasons why the statement is

misleading.") (quoting 15 U.S.C. § 78u-4(b)(1)).   For example, Plaintiffs purport to challenge

Navient's earnings guidance, *see, e.g.*, CAC ¶¶ 107, 135, and reports of Navient's accounting

statistics at particular points in time, *see, e.g., id.* ¶ 91 (PEL charge-off rates); *id.* ¶ 92

(delinquency rates).   When challenging accounting measures and practices, however, the Third

---

[9] Plaintiffs do not allege any "pure" omissions—*i.e.*, omissions that are actionable because of a separate duty to disclose, rather than because they render "misleading" an affirmative statement that has been made.  *See Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153-54 (1972); *In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 631 n.10 (3d Cir. 2011) (*Affiliated Ute* presumptions apply "only when material information is withheld from investors by a defendant having an affirmative duty of disclosure").  Instead, Plaintiffs assert that Defendants' statements were false and misleading because they omitted certain information.  *See, e.g.*, CAC ¶ 143.

[10] "[P]ossession of material nonpublic information alone does not create a duty to disclose it."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1432 (3d Cir. 1997).   Indeed, a duty to disclose under Rule 10b-5 may arise in three circumstances: "when there is [1] insider trading, [2] a statute requiring disclosure, or [3] an inaccurate, incomplete or misleading prior disclosure."  *Oran v. Stafford*, 226 F.3d 275, 285-86 (3d Cir. 2000) (affirming dismissal on finding no duty to disclose dates it learned of adverse data and reports, as none of the three circumstances was present); *United States v. Schiff*, 602 F.3d 152, 163 (3d Cir. 2010) (identifying *Oran* factors as exhaustive).  None of these circumstances are alleged in this case.

[11] Claims based on alleged omissions most clearly manifest the problems created by Plaintiffs' improper "shotgun" or "puzzle" pleading.  *See* Section I, *supra.*

13

Circuit has "required plaintiffs to state what the unreasonable practices were and how they distorted the disclosed data." *Burlington*, 114 F.3d at 1417-18.   The Complaint fails to meet even this modest requirement.   Plaintiffs do not allege that Navient's guidance and accounting statistics were improperly calculated or otherwise wrong.   Nor do they explain how or why the omitted information regarding certain borrowers—or any other allegedly omitted information— affected Navient's guidance or the financial statistics it reported in any given period. Accordingly, Plaintiffs have not alleged facts sufficient to plead that the challenged statements were false.   *See Chubb*, 394 F.3d at 153-54 (rejecting claims lacking "particulars regarding the amount by which reserves were distorted, or how much revenue was improperly recognized").

> ### d.    Plaintiffs Fail To Allege Actionable Forward-Looking Statements

Despite Plaintiffs' bare assertion to the contrary, CAC ¶ 236, Navient consistently accompanied its forward-looking statements with detailed cautionary language, *id.* ¶¶ 234-43. This is critically important because "[u]nder the PSLRA, alleged misrepresentations are not actionable if they fall within the safe harbor for forward-looking statements . . . identified as a forward-looking statement, and accompanied by meaningful cautionary statements." *Aetna*, 617 F.3d at 278, 282 (citing 15 U.S.C. § 78u-5(c)).[12]

For example, challenged statements relating to Navient's earnings guidance, *e.g.*, CAC ¶¶ 107, 135, plainly qualify as forward-looking.   *See* 15 U.S.C. § 78u–5(i)(1)(A) (statements "containing a projection of…earnings"); *see also Aetna*, 617 F.3d at 281 ("Statements about future profitability and assumptions underlying management's expectations about the future fall

---

[12] In addition, even if forward-looking statements are not specifically identified as such (which they were, here), they can still be protected under the "bespeaks caution doctrine" if cautionary language accompanying the statements "renders the alleged omissions or misrepresentations immaterial as a matter of law." *SEPTA*, 2015 WL 3833849, at *15.

squarely within the definition of a forward-looking statement."). Indeed, Navient consistently identified its earnings guidance as forward-looking expectations. *See* Ex. 1 at 2 ("[W]e expect core earnings to be $2.10 per share"). Navient's earnings guidance also contained meaningful cautionary statements. Navient warned that "[a]ctual results in the future may be materially different from those discussed here" and referred investors to the risk factors listed in its SEC filings. *Id.* at 1-2. There, Navient thoroughly detailed the risk factors that could impact earnings guidance, including the specific risks Plaintiffs identify as being at issue: credit and liquidity, loan defaults, access to capital, and Navient's models, which utilize estimates and assumptions. Ex. 2 at 14-25. This cautionary language renders Navient's statements about earnings guidance inactionable. *See Aetna*, 617 F.3d at 283 (cautionary language was meaningful where it warned investors that accuracy of costs could not be assured and may exceed projections).

### 2.   Plaintiffs Fail To Plead The Falsity Of Statements Concerning Navient's Compliance Efforts

Plaintiffs allege that statements regarding Navient's "compliance culture," "customer-first approach," and various programs aimed at enhancing compliance and customer service were false and misleading in light of (i) the investigations conducted by the CFPB and other government entities, (ii) the DOE's decision not to renew its contract with Navient's subsidiary, Pioneer, and (iii) alleged issues involving military borrower loans. CAC ¶¶ 88, 106, 111, 144-150. These statements are inactionable "puffery" and, in any event, were not false or misleading.

#### a.   The Challenged Statements Regarding Navient's Compliance Efforts Are Inactionable Puffery

"Material representations must be contrasted with statements of subjective analysis or extrapolations, such as opinions, motives and intentions, or general statements of optimism." *Aetna*, 617 F.3d at 283. "Such statements constitute no more than 'puffery' and are understood by reasonable investors as such." *Id.* (citing *In re Advanta Corp. Secs. Litig.*, 180 F.3d 525, 538

15

(3d Cir. 1999)).  Statements that Navient had a "strong compliance culture" and a "customer-first approach" are quintessential puffery, and thus "immaterial as a matter of law."  *Id.* at 284; *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014) ("[G]eneral statements about reputation, integrity, and compliance with ethical norms are inactionable 'puffery,' [and] 'too general to cause a reasonable investor to rely upon them.'").

> b.  **The Challenged Statements Regarding Navient's Compliance Were Not False Or Misleading When Made**

Furthermore, Plaintiffs have not alleged facts sufficient to show that these statements—or others regarding the Company's customer-first approach and regulatory compliance efforts— were false or misleading when made.  Plaintiffs point to investigations regarding Navient's compliance work, but the advent of a non-public investigation is not even a disclosable event. *See, e.g., In re Lions Gate Entm't Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 15-16 (S.D.N.Y. 2016) (finding that plaintiffs failed sufficiently to plead materiality or other factors that might make receipt of a Wells notice a disclosable event under GAAP or other SEC rules).  Moreover, "[t]he mere existence of an [] investigation does not suggest that any of the allegedly false statements were actually false."  *In re Hutchinson Tech., Inc., Sec. Litig.*, 536 F.3d 952, 962 (8th Cir. 2008) (affirming dismissal where additional information would not cure pleading deficiencies in falsity, materiality, or scienter); *see also Loos v. Immersion Corp.*, 762 F.3d 880, 890 (9th Cir. 2014) ("[A]nnouncement of an investigation does not 'reveal' fraudulent practices to the market."); *Meyer v. Greene*, 710 F.3d 1189, 1201 (11th Cir. 2013) ("[T]he announcement of an investigation reveals just that—an investigation—and nothing more.").[13]

---

[13] Moreover, Plaintiffs' theory does not even comport with the facts alleged.  As the Complaint acknowledges, Navient continually disclosed information about government investigations throughout the Class Period, even as it referenced Company compliance efforts.  *See, e.g.,* CAC ¶¶ 46, 99, 118, 156-57, 186; *see also supra* at 4-5.  Plaintiffs do not (and cannot) allege that Navient lacked programs to help borrowers navigate repayment and avoid default or that Navient

16

### 3.   Plaintiffs Fail To Plead The Falsity Of Statements Concerning Navient's Credit Facilities

Plaintiffs assert that Navient's periodic reports regarding credit facilities were misleading because they did not disclose that certain facilities "were at risk of being eliminated or reduced, thereby increasing Navient's borrowing costs." CAC ¶¶ 143, 191; *see also id.* ¶¶ 94, 105, 116, 133, 141, 190.  But the risk of losing inexpensive credit is common to all borrowers, and failure to highlight those common risks does not make statements about the existing capacity of Navient's credit facilities false or misleading.  *See* Section II.A.1.c, *supra*; *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011); *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 363-64 (2d Cir. 2010) (affirming that there was no duty to disclose common market risks).

Moreover, Navient warned investors that its "business is affected by the cost and availability of funding," and "factors that could make financing more expensive or unavailable to Navient include," *inter alia*, "regulatory actions" and "legal, regulatory, and tax environments governing funding transactions." *See, e.g.*, Ex. 2 at 15.  Navient was not then also required to speculate about the effect that a proposed public rule for third-party FHLB-DM *might* have on certain of its credit facilities.[14]  *See Gaer v. Educ. Mgmt. Corp.*, No. 10-1061, 2011 WL 7277447, at *23 (W.D. Pa. Aug. 30, 2011) (finding that defendant who warned investors about

---

failed to make other efforts to promote compliance. *See, e.g.*, Ex. 2 at 4-5, 11.  Plaintiffs also fail to allege any facts showing that government investigations and consumer complaints during the Class Period or ongoing efforts to address the servicing of loans to military borrowers rendered Navient's statements about its compliance efforts false or misleading.  Without alleging such facts, Plaintiffs fail to meet the PSLRA's particularity requirements on this claim.

[14] Plaintiffs do not contend that Defendants knew the FHLB-DM credit facility would be reduced, but only that events "could lead" to a reduction.  CAC ¶ 206.  Plaintiffs also appear to allege that Defendants violated two SEC regulations (S-X and S-K) in connection with statements regarding the credit facilities.  *Id.* ¶¶ 201-06.  However, a "violation of SK-303's reporting requirements does not automatically give rise to a material omission under Rule 10b-5" and a duty of disclosure "must be separately shown." *Oran*, 226 F.3d at 288-89.  In any event, Navient disclosed the risks Plaintiffs allege were concealed. *See* Section II.A.3, *supra*.

regulatory risks was "not obligated to predict months in advance about the final regulations that eventually issued"). Defendants' alleged omissions do not support a securities fraud claim.

## B.      The Amended Complaint Fails To Plead Scienter

Congress has set an "[e]xacting pleading standard for scienter" in securities fraud actions. *Avaya*, 564 F.3d at 253; 15 U.S.C. § 78u-4(b)(2). A plaintiff must allege particularized facts showing "a misrepresentation so recklessly made that the culpability attaching to such reckless conduct closely approaches that which attaches to conscious deception." *See In re Digital Island Sec. Litig.*, 357 F.3d 322, 332 (3d Cir. 2004).[15] Far from showing knowing or reckless misconduct, the facts alleged in the Complaint sustain the opposite inference—that neither Navient nor any Defendant intended to deceive, manipulate, or defraud anyone.

In most securities fraud class actions, plaintiffs allege in great detail facts evidencing that the defendants knew of, or were reckless in ignoring the falsity of their statements. These allegations typically reference contemporaneous documents, statements from witnesses who interacted directly with defendants on the issues at hand, stock sales that are suspicious in timing and amount, and other evidence creating the inference that defendants were consciously deceiving a company's investors. Then the parties have a spirited debate about whether these facts, "taken collectively, give rise to a strong inference of scienter." *Avaya*, 564 F.3d at 269.[16] Here, no such debate is warranted, as Plaintiffs' Complaint lacks any of these detailed

---

[15] *See also Gold v. Ford Motor Co.*, 577 F. App'x 120, 123 (3d Cir. 2014) ("Under the PSLRA, a plaintiff properly pleads scienter by alleging facts that 'constitute circumstantial evidence of either reckless or conscious [mis]behavior.'"); *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 493 (3d Cir. 2013) (describing recklessness as "an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it").

[16] Notwithstanding the holistic standard for pleading scienter, this Court has rightly held that "[c]obbling together a litany of inadequate allegations does not render those allegations particularized in accordance with . . . the PSLRA." *AJZN*, 2015 WL 331937, at *3.

18

allegations—or any other support for the strong inference of scienter required to survive a dismissal motion under the PSLRA.

### 1.    Plaintiffs' "Fraud By Hindsight" And "Should Have Known" Allegations Are Insufficient As A Matter Of Law

Unable to cite any emails, documents, or other materials suggesting, much less showing that Defendants knew any alleged statements were false when made, Plaintiffs first point to cherry-picked portions of a July 22, 2015 statement by Mr. Remondi regarding the increase in Navient's Q2 2015 allowance.  CAC ¶¶ 36-38, 182-84.  Mr. Remondi's *post-mortem* diagnosis of the loans that recently exited deferment in no way suggests, much less suggests strongly, that any Defendant was previously aware these loans would suffer such default rates.[17]  Courts have "long rejected [such] attempts to plead fraud by hindsight." *Chubb*, 394 F.3d at 158.

Next, Plaintiffs allege as "additional support" for their scienter claim that Defendants held important positions within Navient, and had experience and expertise in Navient's business. CAC ¶¶ 227-29.  Plaintiffs fail to explain how these facts are in any way relevant to their claims. Allegations that Defendants "should have known" that their statements were false cannot sustain a securities fraud claim.  *See, e.g.*, *GSC Partners*, 368 F.3d at 239 ("Of course, it is not enough for plaintiffs to merely allege that defendants 'knew' their statements were fraudulent or that defendants 'must have known' their statements were false."); *Starr Invs. Cayman II, Inc. v.*

---

[17] Notably, just one quarter prior to the announcement that Navient would be increasing its allowance, Mr. Remondi announced that "the class of 2014, which recently entered repayment, is showing the best performance of any recent graduating class" and "measured at the same time in repayment, their 30-plus delinquency rate is one-half the rate of borrowers who graduated in the great recession and 6% lower than the class of 2013."  Ex. 3 at 3.  Thus, a more plausible inference is that Remondi had *no* knowledge prior to Q2 2015 that these borrowers would have difficulty with repayment, and was instead relaying to investors the results of a hindsight analysis that the Company conducted after the performance of this loan cohort unexpectedly worsened.  *Avaya*, 564 F.3d at 267-68 ("oblig[ing] courts to weigh the 'plausible nonculpable explanations for the defendant's conduct' against the 'inferences favoring the plaintiff'") (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2510 (2007).

*China MediaExpress Hldgs., Inc.*, No. 11-233, 2014 WL 4180331, at *3 (D. Del. Aug. 21, 2014) (rejecting "should have known" allegations at the pleading stage).[18]  And to the extent Plaintiffs seek to assert the narrow "core operations" doctrine, they fail to allege, as they must, facts showing that the misstatements are "of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter." *Percoco v. Deckers Outdoor Corp.*, No. 12-1001, 2013 WL 3584370, at *5 (D. Del. July 8, 2013) ("Only in rare instances can core operations alone allow inferences of scienter.").

### 2.   Plaintiffs' Confidential Witness Allegations Are Insufficient As A Matter Of Law

"Where, as here, plaintiffs lack documentary evidence such as internal memoranda, 'reliance on confidential sources . . . assumes a heightened importance.'" *Avaya*, 564 F.3d at 261.  But confidential witness allegations must contain both sufficient detail about the sources themselves—and the purported bases for their knowledge—to be credited, and sufficient detail about the purported facts to sustain a strong inference of scienter.  *Id.* at 263 n.33; *Metzler Inv. GMBH v. Corinthian Colls., Inc.*., 540 F.3d 1049, 1069 n.13 (9th Cir. 2008).  Plaintiffs' three confidential witnesses—all former low-level collections personnel cited to "[c]onfirm that the Exchange Act Defendants [k]nowingly or [r]ecklessly [e]ngaged" in the alleged misconduct, CAC ¶¶ 217-26—do not come close to satisfying either condition.

---

[18] *See also In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 282 (3d Cir. 2006) (holding that "blanket" allegations based on a defendant's "position, without any attempt to link specific individuals to specific instances of reckless conduct," do not meet the requirements of the PSLRA or Rule 9(b)); *Baker v. MBNA Corp.*, No. 05-272, 2007 WL 2009673, *7 (D. Del. July 6, 2007) (Sleet, J.) (dismissing claims against certain officers, as "plaintiffs' blanket allegations against 'the defendants' and 'management' do not meet the particularity requirements of Rule 9(b) or the PSLRA").  Nor do allegations that officers signed SOX certifications (CAC ¶¶ 151-54) support, much less establish, scienter.  *Johansson*, 2015 WL 5000848, at *9 ("The court is not convinced that signing an SEC filing alone, without additional allegations of knowledge or intent, is sufficient to give rise to a *strong inference* of scienter.").

20

First, Plaintiffs' confidential witness allegations lack the detail necessary to render their purported assertions credible. Courts consider "the detail provided by the confidential sources, the sources' basis of knowledge, [and] the reliability of the sources" when assessing the utility of their allegations. *Avaya*, 564 F.3d at 263. Where, as here, those details are lacking—or are demonstrably untrue[19]—the court "must discount them steeply." *Id.*.

Second, even if the confidential witnesses' statements were credible, they do not suggest, much less suggest strongly, any Defendant's scienter. The three confidential witnesses are all former employees in Navient's collection function. CAC ¶¶ 22-24. Each worked with or supervised only a small portion of Navient's collection force—itself a small portion of Navient's employee base. *Compare e.g.*, *id.* ¶ 23 (CW2 "supervised up to 25 Collections Agents") *with* Ex. 5 at 9 (noting Navient's "7,300 employees" as of December 31, 2015). Furthermore, each of them worked at Navient for only part of the Class Period, *see* CAC ¶¶ 217-19, 222, and none of them is alleged to have had any direct or indirect contact with any Defendant, *id.* ¶¶ 22-27, 217-26. Indeed, they are not even alleged to have had salient contact with any senior Navient personnel. *Id.* As such, the facts they purportedly provide establish neither trends within Navient nor, more importantly, senior management's knowledge of such trends. The allegations do not sustain a strong inference of scienter as to any Defendant. *Avaya*, 564 F.3d at 263 n.33; *Metzler*, 540 F.3d at 1069 n.13 (dismissing claim where confidential "witnesses do not convey information sufficient to support the strong inference of scienter that the PSLRA requires").

### 3. Plaintiffs' Motive Allegations Are Insufficient As A Matter Of Law

Plaintiffs also fail to establish any motive for any Defendant to defraud Navient

---

[19] For example, CW3 purportedly describes meetings during the class period (that she did not attend) as attended by Defendants Remondi and Chivavibul, as well as "John Kane and Director of Collections Jason Benepe[.]" CAC ¶ 220. Yet Mr. Benepe cannot have attended any such meetings, as he left Pioneer in March 2009—five years before the events at issue in this case.

21

investors.[20]  Plaintiffs allege that "Navient benefited from the fraud" by selling debt in its November 2014 and March 2015 offerings on favorable terms, CAC ¶ 230, but this "general corporate motive … is not sufficient to give rise to a strong inference of scienter." *In re Great Atl. & Pac. Tea Co., Inc. Sec. Litig.*, 103 F. App'x 465, 469 (3d Cir. 2004) (allegations that defendant sold notes on favorable terms do not establish scienter).  Plaintiffs further cite Defendants' holdings in Navient stock to support scienter, CAC ¶ 227, but this assertion *undermines* any claimed motive to defraud.  Mr. Remondi and Mr. Chivabul *accumulated* shares—and did not sell shares (other than for tax purposes)—during the Class Period, which "raise[s] an inference against scienter." *Monk v. Johnson & Johnson*, No. 10-4841, 2011 WL 6339824, at *12 n.12 (D.N.J. Dec. 19, 2011).  As the executives' "interests were at all times tied to the value of their shares"—and thus aligned with Plaintiff shareholders' interests—there is "no basis to infer the sort of conscious disregard and deliberate ignorance required to plead scienter." *Globis Cap. Partners, L.P. v. Stonepath Grp., Inc.*, 241 F. App'x 832, 837 (3d Cir. 2007).

Having had at least five months to investigate their claims, Plaintiffs cannot cite a single email, internal document, relevant witness, or other particularized fact to show that Defendants knew or consciously ignored the alleged falsity of the statements made.  The absence of any such facts or credible motive is telling, and warrants dismissal. *Klein v. Autek Corp.*, 147 F. App'x 270, 277 (3d Cir. 2005) (dismissing where "blanket assertions" of scienter had no "corroborating factual support explaining how and why the [d]efendants knew the statements to be false").[21]

---

[20]  Even if Plaintiffs had alleged facts showing motive—and they have not—"'motive and opportunity' may no longer serve as an independent route to scienter." *Avaya*, 564 F.3d at 277.

[21]  *See also Sapir v. Averback*, No. 14-7331, 2016 WL 554581, at *10 (D.N.J. Feb. 10, 2016) (dismissing where plaintiff failed to "cite a single document or witness that corroborate[d] allegations of scienter"); *Pollio v. MF Glob., Ltd.*, 608 F. Supp. 2d 564, 572 (S.D.N.Y. 2009) (dismissing with prejudice complaint that failed to "identify a single document, communication, report, or piece of information received by or in the possession of any defendant").

22

## III.   PLAINTIFFS FAIL TO STATE CLAIMS UNDER THE SECURITIES ACT

Based on the same alleged misrepresentations and course of conduct animating their defective Exchange Act claims, Plaintiffs assert claims under the Securities Act against Navient, Messrs. Remondi and Chivabul, eight current and former Navient directors, and nine banks that underwrote Navient's bond offerings.  Here, as with their Exchange Act claims, Plaintiffs fail to allege facts showing any actionable misrepresentation or omission by any Defendant.

### A.   Plaintiffs' Securities Act Claims Sound In Fraud

Despite Plaintiffs' artful pleading efforts, their Securities Act claims are subject to Rule 9(b) of the Federal Rules of Civil Procedure, which "provides that in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Suprema*, 438 F.3d at 270.  Plaintiffs' Securities Act claims "sound in fraud."  In *Chubb*, 394 F.3d at 161-63, and *Suprema*, 438 F.3d at 272-73, the Third Circuit delineated when Securities Act claims "sound in fraud" and are thus subject to Rule 9(b)'s heightened pleading standard— notwithstanding plaintiffs' efforts to suggest otherwise.  In *Chubb*, the Third Circuit held that even if plaintiffs disavow fraud, doing so "is insufficient to divorce the claims from their fraudulent underpinnings"—particularly where "a core theory of fraud permeate[d] the entire" complaint.  *Chubb*, 394 F.3d at 160.  In *Suprema*, the Third Circuit explained that, to avoid having their Section 11 claim "sound in fraud," plaintiffs must "delineat[e] the allegations that support the negligence cause of action as distinct from the fraud."  *Suprema*, 438 F.3d at 273.

Here, though Plaintiffs have superficially divided their Complaint, they directly allege acts of fraud in service of their Section 11 claim.  For example, they allege that Navient and its subsidiaries "were misleading borrowers about the benefits of a federal student loan rehabilitation program," CAC ¶ 287(a), "were engaged in improper and unlawful loan servicing and debt collection practices," *id.* ¶ 287(b), and "overcharg[ed] borrowers who were active-duty

23

military service members," *id.* These are allegations of intentional misconduct. *Suprema*, 438 F.3d at 273. Plaintiffs also expressly incorporate by reference into their Section 11 claim allegations from their Section 10(b) claim, which unquestionably "sound in fraud." *See* CAC ¶¶ 287, 297 (incorporating CAC ¶¶ 21-33, 35-38, 42-45, 56, 59-65). They incorporate allegations that "Navient engaged in a widespread and continual practice of concealing from investors" delinquencies in PEL loans, *id.* ¶ 21; that "Navient senior management knew or recklessly disregarded [Navient's] improper practices," *id.* ¶ 24; and that "developments leading to the Company's disappointing quarterly results were previously known or available to" Defendants, *id.* ¶ 37. Since the Complaint includes and incorporates Section 10(b) fraud allegations in its Section 11 claim, Plaintiffs' self-serving assertion that they do not "allege[] fraud, scienter, or the intent of Defendants to defraud" does not transform the analysis.[22] *See Chubb*, 394 F.3d at 160-61 (applying Rule 9(b) to Section 11 claim involving "knowing[] and intentional[]" accounting violations). Plaintiffs' Securities Act claims are governed by Rule 9(b).

**B.  The Amended Complaint Fails To Plead Falsity**

"Under Section 11, a private action for damages may be brought by any person acquiring such security if a registration statement, as of its effective date: (1) contained an untrue statement of material fact; (2) omitted to state a material fact required to be stated therein; or (3) omitted to state a material fact necessary to make the statements therein not misleading." *Suprema*, 438 F.3d at 269; 15 U.S.C. § 77k(a). Accordingly, Plaintiffs' Section 11 claims are limited to alleged misrepresentations contained or incorporated in the registration statements for Navient's bond offerings. Pursuant to Rule 9(b), the circumstances of these untruths must be dismissed if they

---

[22] Indeed, in their Securities Act counts, Plaintiffs allege that for "statements of opinion or belief, the Securities Act Defendants did not actually hold those opinions at the time the statements were made" (CAC ¶ 300)—thereby accusing Defendants of fraud.

are not "stated with particularity." *In re Alcatel*, 382 F. Supp. 2d at 530-31 (dismissing Securities Act claims for failure to comply with Rule 9(b)).  As set forth above, Plaintiffs have failed to plead falsity at all—let alone with particularity.  *See* Section II.A, *supra*.[23]

Importantly, even if Rule 9(b) did not govern their Section 11 claim, Plaintiffs still have failed to plead the material falsity of the alleged misrepresentations.  Under Rule 8, Plaintiffs are required to allege "sufficient factual matter ... to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To be facially plausible a claim must be supported by "well-pleaded facts [that] permit the court to infer more than the mere possibility of misconduct." *Id.* at 679.  Plaintiffs' "puzzle pleading" plainly does not meet this standard.  *See* Section I, *supra*.  And Plaintiffs' allegations—whether particularized or not, and taken as true— fail to show that Defendants made any material false statements during the Class Period.  *See* Section II.A, *supra*.[24]  Dismissal of the Securities Act claims is warranted.[25]

## CONCLUSION

For the aforementioned reasons, the Complaint should be dismissed with prejudice.

---

[23] Specifically, the alleged misstatements in the Offering Materials concerning Navient's allowance for PEL losses (CAC ¶¶ 279-81, 290-91) are addressed in Section II.A.1, *supra*; the alleged misstatements "concerning Navient's strengths" (*id.* ¶¶ 282, 294) are addressed in Section II.A.2, *supra*; and the alleged omissions of risk factors (*id.* ¶¶ 283-84, 292-93) are addressed in Sections II.A.1-3, *supra*.  Plaintiffs' summary assertion that Navient failed to identify certain risk factors (CAC ¶¶ 283), necessarily ignores the numerous Company-specific warnings set forth and incorporated in Navient's Offering Materials.  *See* Section II.A.1.d, *supra*.

[24] *See, e.g.*, *In re Wilmington Trust*, 852 F. Supp. 2d at 492 (dismissing Exchange Act and Securities Act claims for failure to plead false statement); *In re Fairway Group Hldgs. Corp. Sec. Litig.*, No. 14-950, 2015 WL 4931357, *27 (S.D.N.Y. Aug. 19, 2015) (same); *In re AirGate PCS, Inc. Sec. Litig.*, 389 F. Supp. 2d 1360, 1374-76 (N.D. Ga. 2005) (same).

[25] "To state a claim under § 12(a)(2), plaintiffs must satisfy the same requirements as under § 11." *Backhaus v. Streamedia Commc'ns, Inc.*, No. 01-4889, 2002 WL 1870272, at *5 (S.D.N.Y. Aug. 14, 2002).  Further, Plaintiffs' controlling person claims under 15 U.S.C. § 78t(a) (Count II) and 15 U.S.C. § 77o (Count V) are derivative of, and must be dismissed with the claims under 15 U.S.C. § 78j(b) (Count I) and 15 U.S.C. §§ 77k (Count III), respectively.  *See, e.g.*, *In re Wilmington Trust Sec. Litig.*, 29 F. Supp. 3d 432, 454 (D. Del. 2014).

**RICHARDS LAYTON & FINGER, P.A.**

_/s/ Kelly E. Farnan_
Kelly E. Farnan (#4395)
farnan@rlf.com
One Rodney Square
920 N. King Street
Wilmington, DE  19801
(302) 651-7700

**LATHAM & WATKINS LLP**

Peter A. Wald (_pro hac vice_)
505 Montgomery Street
Suite 2000
San Francisco, CA 94111
Tel: 415.391.0600

Abid R. Qureshi (_pro hac vice_)
Christopher S. Turner (_pro hac vice_)
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200

Christopher R. Harris (_pro hac vice_)
885 Third Avenue
New York, NY 10022
Tel: 212.906.1200

_Counsel for Navient Corporation and the Individual Defendants_