IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LORD ABBETT AFFILIATED FUND, INC., *et al.*, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

NAVIENT CORPORATION, JOHN F. REMONDI, SOMSAK CHIVAVIBUL, WILLIAM M. DIEFENDERFER, III, ANN TORRE BATES, DIANE SUITT GILLELAND, LINDA MILLS, BARRY A. MUNITZ, STEVEN L. SHAPIRO, JANE J. THOMPSON, BARRY L. WILLIAMS, CREDIT SUISSE SECURITIES (USA) LLC, DEUTSCHE BANK SECURITIES INC., J.P. MORGAN SECURITIES LLC, RBC CAPITAL MARKETS, LLC, BARCLAYS CAPITAL INC., GOLDMAN, SACHS & CO., MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, RBS SECURITIES INC., and WELLS FARGO SECURITIES, LLC,

Defendants.

C.A. No. 16-112-GMS

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS UNDER FED. R. CIV. P 12(b)(6) BY NAVIENT CORPORATION AND THE INDIVIDUAL DEFENDANTS**

**OF COUNSEL:**

**LATHAM & WATKINS LLP**

Peter A. Wald (*pro hac vice*)
505 Montgomery Street
Suite 2000
San Francisco, CA 94111
Tel: 415.391.0600

**RICHARDS LAYTON & FINGER, P.A.**

Kelly E. Farnan (#4395)
farnan@rlf.com
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Tel: 302.651.7700

Abid R. Qureshi (*pro hac vice*)
Christopher S. Turner (*pro hac vice*)
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200

Christopher R. Harris (*pro hac vice*)
885 Third Avenue
New York, NY 10022
Tel: 212.906.1200

*Counsel for Navient Corporation and the Individual Defendants*

**TABLE OF CONTENTS**

Page

I. PLAINTIFFS DO NOT DENY THEIR IMPROPER "PUZZLE PLEADING" ....2

II. PLAINTIFFS FAIL TO PLEAD FALSITY ....3

A. Plaintiffs Fail To Plead The Material Falsity Of Any Statement Regarding Forbearance ....3

B. Plaintiffs Fail To Plead The Material Falsity Of Any Statement Regarding Compliance ....6

III. PLAINTIFFS FAIL TO PLEAD SCIENTER ....7

A. Plaintiffs Fail To Plead Scienter Based On Allegations From Prior Litigation ....8

B. Plaintiffs' Other Efforts To Plead Scienter Fare No Better ....9

IV. PLAINTIFFS' SECURITIES ACT CLAIMS FAIL ....12

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*In re ABFS Inc. Noteholders Litigation*,
2008 WL 3405580 (E.D. Pa. Aug 11, 2008) ..........5

*In re ABFS Securities Litigation*,
413 F. Supp. 2d 378 (E.D. Pa. 2005) ..........5

*In re Alcatel Securities Litigation*,
382 F. Supp. 2d 513 (S.D.N.Y. 2005)..........2

*In re Alphapharma Securities Litigation*,
372 F.3d 137 (3d Cir. 2004)..........11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........12

*Assalone v. S-L Distrib. Co.*,
978 F. Supp. 2d 427 (M.D. Pa. 2013) ..........3, 5

*CalPERS v. Chubb Corp.*,
394 F.3d 126 (3d Cir. 2004).......... *passim*

*City of Pontiac Policemen's & Firemen's Retirement System v. UBS AG*,
752 F.3d 173 (2d Cir. 2014)..........7

*Fait v. Regions Financial Corp.*,
655 F.3d 105 (2d Cir. 2011)..........4

*Frederico v. Home Depot*,
507 F.3d 188 (3d Cir. 2007)..........3, 5

*In re Intelligroup Securities Litigation*,
527 F. Supp. 2d 262 (D.N.J. 2007) ..........11

*Local 338 v. Hewlett-Packard Co.*,
2017 WL 218026 (9th Cir. Jan. 19, 2017) ..........7

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
135 S. Ct. 1318 (2015) ..........4

*Palm Beach Police Pension Fund v. DFC Global Corp.*,
2015 WL 3755218 (E.D. Pa. June 16, 2015) ..........8, 9

*Percoco v. Deckers Outdoor Corp.*,
2013 WL 3584370 (D. Del. July 8, 2013) ....................10

*Rahman v. Kid Brands, Inc.*,
736 F.3d 237 (3d Cir. 2013)....................10

*Ret. Sys. v. Horizon Lines, Inc.*,
442 F. App'x 672 (3d Cir. 2011) ....................11

*In re Sanofi Securities Litigation*,
155 F. Supp. 3d 386 (S.D.N.Y. 2016)....................7

*SEC v. Kearns*,
691 F. Supp. 2d 601 (D.N.J. 2010) ....................7

*SEPTA v. Orrstown Financial Services*,
2015 WL 3833849 (M.D. Pa. June 22, 2015)....................4, 6

*Shapiro v. UJB Financial Corp.*,
964 F.2d 272 (3d Cir. 1992)....................4

*In re SLM Corp. Securities Litigation*,
740 F. Supp. 2d 542 (S.D.N.Y. 2010)....................6, 9, 12

*In re Suprema Specialties, Inc. Securities Litigation*,
438 F.3d 256 (3d Cir. 2006)....................12

*In re Tellium Inc., Securities Litigation*,
2005 WL 1677467 (D.N.J. June 30, 2005) ....................2

*Tongue v. Sanofi*,
816 F.3d 199 (2d Cir. 2016)....................4, 5

*In re Tyson Foods Securities Litigation*,
2004 WL 1396269 (D. Del. June 17, 2004)....................11

*In re Tyson Foods, Inc. Securities Litigation*,
155 F. App'x 53 (3d Cir. 2005) ....................11

*In re Wilmington Trust Securities Litigation*,
852 F. Supp. 2d 477 (D. Del. 2012)....................2, 12

*Zavolta v. Lord, Abbett & Co. LLC*,
2010 WL 686546 (D.N.J. Feb. 24, 2010) ....................11

## STATUTES

15 U.S.C. §78u-4(b)(1) .......... 2

## RULES

Fed. R. Civ. P. 8 .......... 12

Fed. R. Civ. P. 9(b) .......... 12

Fed. R. Civ. P. 12(b)(6) .......... 3

Plaintiffs' Complaint states no claim. It does nothing more than recite pages of Navient public statements, and summarily list the reasons that some or all of them were allegedly false or misleading when made.[1] As discussed in Defendants' motion, this kind of "puzzle pleading" is procedurally improper. Br. at 6-7. Rather than rebut the defects in their Complaint, Plaintiffs attempt in their Opposition to cure those defects, and fit their "puzzle pieces" together in support of new theories. Yet Plaintiffs' Opposition cannot be used to correct the Complaint's deficiencies. Dismissal on this ground alone is warranted. *See infra* Section I.

In addition, Plaintiffs' Opposition reveals the Complaint's several substantive flaws. Plaintiffs' core argument is that Navient pushed borrowers into forbearance—temporary reprieves from their payment obligations—and thereby understated its allowance for loan losses ("ALL"). Plaintiffs further argue that this effort caused their loss in July 2015, when Navient announced an increase in its second quarter loan loss provisions and Navient's stock price dropped. *See* Opp. at 1-2, 4-6, 9-14, 16-22. Yet as Plaintiffs themselves allege, the July 2015 spike in Navient's loan loss reserve resulted from students exiting *deferments*—grace periods given to borrowers who, for example, have returned to school—not exits from forbearance. *Id.* at 12; CAC ¶ 177. Nowhere do Plaintiffs allege that Navient's deferment statistics were false or misleading. Moreover, as public materials make clear, and Plaintiffs do not deny, Navient accounted for all such forbearances in its loan loss models. *See infra* Section II.

Finally, Plaintiffs rest their allegations of Defendants' scienter on three witnesses who had no contact with any Defendant. Opp. at 17-19. In doing so, they fail to plead a plausible—much less strong—inference of scienter. *See infra* Section III.

---

[1] Herein, Defendants abbreviate the operative complaint (D.I. 36) "CAC," the opening brief in support of this motion (D.I. 39) "Br.", and Plaintiffs' opposition brief (D.I. 43) "Opp." The abbreviation "Ex." shall refer to exhibits to the Turner (D.I. 40) and Jones (filed herewith) Declarations in support of this motion.

Plaintiffs' claims should not only be dismissed, but dismissed with prejudice.

## I. PLAINTIFFS DO NOT DENY THEIR IMPROPER "PUZZLE PLEADING"

Plaintiffs have failed to tie—as they must (*see, e.g.*, *In re Tellium Inc., Sec. Litig.*, 2005 WL 1677467, at *15 n.14 (D.N.J. June 30, 2005))—alleged misstatements to the specific reasons they are false or misleading. Br. at 6-7. Because Plaintiffs do not dispute that they are required to make this showing—and make no effort to explain how or why their Complaint meets this baseline requirement—their Complaint must be dismissed.

Instead, Plaintiffs first assert that "puzzle pleading" is a mere catchphrase. Opp. at 3. But this response does not deny, much less satisfy their pleading obligations. The common phrase "puzzle pleading" reflects the well-settled principle that a securities fraud complaint must allege with particularity how and why each alleged misrepresentation is false or misleading, 15 U.S.C. §78u-4(b)(1)—and also reflects jurists' frustration with plaintiffs who improperly attempt to shift this burden to defendants and the courts.[2] Plaintiffs make no effort to rebut or distinguish these authorities.[3] Instead, they double down on their suggestion that parallel laundry lists of alleged "misstatements" and "reasons why they are false or misleading" are sufficiently particularized to state their claim:

> The Complaint identifies specific challenged statements (¶¶ 31-34, 86-97, 103-17, 119-42, 144-49, 151-53, 236-42) and describes why they were false or misleading when made (¶¶ 21-30, 35-38, 49-52, 100-02, 143, 146-47, 150, 154, 156, 177, 180-84, 186, 192, 194, 217-26, 243). Plaintiffs accordingly plead the "who, what, when, where, and how" of the misconduct, as the PSLRA requires.

Opp. at 8-9. Plaintiffs then use their Opposition to "plead" how and why Defendants' statements

---

[2] *See* Br. at 6-7 (citing*, e.g.*, *Tellium*, 2005 WL 1677467, at *15 n.14; *In re Alcatel Sec. Litig*., 382 F. Supp. 2d 513, 534-35 (S.D.N.Y. 2005)).

[3] Indeed, Plaintiffs cite with approval (Opp. at 24) *In re Wilmington Trust Securities Litigation*, which dismissed Securities Act and Exchange Act claims where the complaint cites "a laundry list of reasons why a statement could be untrue." 852 F. Supp. 2d 477, 490-91 (D. Del. 2012).

were actionably false—rather than show how their Complaint does so. Again, this is procedurally improper and cannot cure the Complaint's defects.[4] Perhaps more importantly, Plaintiffs' new—and flawed—attempts to explain their claims only serve to underscore that the Complaint's "puzzle pieces" do not fit together to state plausible claims against Defendants. *See infra* Sections II, III, IV. Dismissal with prejudice is warranted.

## II. PLAINTIFFS FAIL TO PLEAD FALSITY

Plaintiffs' Opposition attempts to lend order to their Complaint's scattershot allegations, *see supra* Section I, focusing attention on unsupported assertions about Navient's forbearance practices (Opp. at 9-14) and compliance efforts (*id.* at 15-16).[5] Yet Plaintiffs still do not plead with particularity any material misrepresentations relating to Navient's alleged misconduct.

### A. Plaintiffs Fail To Plead The Material Falsity Of Any Statement Regarding Forbearance

In their Opposition, Plaintiffs seek to clarify their core claim: that Navient omitted to disclose its "systemic misuse of forbearances," which "ultimately caused Navient to suddenly increase its loan loss provision by 31.7%" in July 2015. Opp. at 11. But their Complaint fails to state this claim—and must be dismissed for three reasons.

First, Plaintiffs' allegations about Navient's forbearance practices are a red herring. Plaintiffs specifically allege that, on July 13, 2015, Navient revised its earnings guidance by raising its provision for borrowers who had exited *deferment* in 2014, and were "experiencing

---

[4] *See, e.g.*, *Frederico v. Home Depot*, 507 F.3d 188, 201-02 (3d Cir. 2007) (courts should "not consider after-the-fact allegations in determining the sufficiency of [plaintiff's] complaints"); *Assalone v. S-L Distrib. Co*., 978 F. Supp. 2d 427, 437 n.3 (M.D. Pa. 2013) ("Facts alleged for the first time in papers opposing a Rule 12(b)(6) motion cannot be considered by the court[.]").

[5] Plaintiffs appear to concede that their allegations regarding Navient's credit facilities are derivative of their allegations regarding forbearance practices and compliance efforts, as they acknowledge that those two things "exacerbated the impact" of the loss of certain credit facilities. Opp. at 16-17.

unfavorable credit trends compared to loans that exited deferment in prior years." CAC ¶ 177. This disclosure has nothing to do with Navient's *forbearance* practices, notwithstanding Plaintiffs' blithe assertions to the contrary. Opp. at 6, 8, 10-14, 18-19. Indeed, Plaintiffs' attempt to link Navient's forbearance practices to the second quarter 2015 increase in its loan loss provision is deeply deceptive. "Deferments" and "forbearances" are different loan statuses and are evaluated and disclosed separately, as is consistently reflected in Navient's public filings. Ex. 2 at 77 & nn.1-2.[6] Plaintiffs do not contend to the contrary.

Second, Navient's ALL is a statement of opinion, and Plaintiffs fail to plead facts showing that this opinion was falsely held. Opinion statements must be analyzed under the standards established in *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 135 S. Ct. 1318 (2015). Plaintiffs' attempts to skirt *Omnicare*, Opp. at 12, are unavailing.[7] Plaintiffs' own case law stands only for the proposition that the ALL should not be treated as an opinion if Navient failed to follow a disclosed methodology. Opp. at 12-13; *see also Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 281 (3d Cir. 1992) (deeming loan loss reserves a matter of judgment). For example, *SEPTA v. Orrstown Financial Services*, 2015 WL 3833849, at *23 (M.D. Pa. June 22, 2015), a case Plaintiffs cite for the proposition that reserves are not

---

[6] In addition to reporting "loans in deferment" and "loans in forbearance" as distinct line items in its Form 10-K, Navient expressly distinguished "loans in forbearance" from "loans in deferment" as "loans for customers who have used their allowable deferment time or do not qualify for deferment, that need additional time to obtain employment or who have temporarily ceased making full payments due to hardship or other factors." *Id.* at 75 & n.2; *see also id.* at 77 n.2.

[7] Contrary to Plaintiffs' characterization (Opp. at 13 n.10), in *Tongue v. Sanofi*, 816 F.3d 199, 210 (2d Cir. 2016), the Court held: "*Omnicare* affirmed that liability for making a false statement of opinion may lie if either 'the speaker did not hold the belief she professed' or 'the supporting fact she supplied were untrue.'" This is essentially the standard used in *Fait v. Regions Financial Corp.*, 655 F.3d 105, 111-13 (2d Cir. 2011), which is cited in Defendants' Opening Brief, Br. at 11-12. *Tongue* notes only that *Omnicare* added a third prong to the *Fait* standard, which Defendants addressed in their Opening Brief, *id.*, and which analysis Plaintiffs do not contravene, *see* Opp. at 12-13.

opinions, holds only that they are not analyzed as opinions when plaintiffs allege that defendants failed to conform to the disclosed methodology for calculating the reserve. Here, Plaintiffs have made no such allegations.[8] Because Navient's ALL statements are opinions, *see* Br. at 10-11, Plaintiffs must allege facts showing that Defendants either did not believe the ALL statements they issued or omitted material information about the ALL. *Tongue*, 816 F.3d at 210. The Complaint in this case contains no such allegations. *See* Section III *infra*.

Third, Plaintiffs fail to plead in their Complaint particularized facts showing improper forbearance practices at Navient.[9] Plaintiffs' bald assertion that Navient "excessively and indiscriminately" provided forbearance to borrowers, Opp. at 1, lacks a single document in support, much less any of the "'who, what, when, where, and how'" details that, as Plaintiffs acknowledge, "the PSLRA requires," *id.* at 9.[10] Instead, Plaintiffs' assertion rests exclusively on anecdotes from three former employees who worked in collection offices. Opp. at 4-6, 9-14.[11]

---

[8] Nor can Plaintiffs cure this defect by now alleging in their Opposition that Navient failed to follow its ALL methodology. *Frederico*, 507 F.3d at 201-02; *Assalone*, 978 F. Supp. 2d at 437 n.3.

[9] Furthermore, Plaintiffs have not identified—in their Complaint *or* their Opposition—any statements to Navient investors about forbearance made false or misleading by these alleged practices. The closest they come is summarily to assert that it was misleading for Navient to describe its use of forbearance as "careful" in its 2014 10-K. CAC ¶¶ 21, 31, 34. Yet Plaintiffs neither show how Navient's alleged efforts were not "careful," nor cite any particularized facts showing that such statement was false.

[10] Plaintiffs' own authorities also support dismissal on this ground. Plaintiffs cite *In re ABFS Inc. Noteholders Litigation* in arguing that they need not provide an accounting of the amounts by which Navient misstated its financials. 2008 WL 3405580, at *1, *8 n.2 (E.D. Pa. Aug 11, 2008) (cited in Opp. at 11 n.6). But the *ABFS* cases stand for exactly the opposite conclusion. In the parallel case, the court dismissed nearly identical claims against the company and its officers because the complaint lacked "specific allegations as to the frequency with which re-aging techniques were used to avoid delinquent loans or specific allegations as to the amount by which the reported delinquency rate was understated at any time." *In re ABFS Secs. Litig.*, 413 F. Supp. 2d 378, 384 (E.D. Pa. 2005). Plaintiffs' complaint also lacks specific allegations regarding the amount and financial reporting implications of Navient's purported forbearance practices.

[11] Plaintiffs also cite a prior case involving forbearance practices at Navient's predecessor Sallie

As Defendants demonstrated in their Opening Brief, the Third Circuit requires plaintiffs relying on confidential witnesses ("CWs") to plead details necessary to render their assertions credible. Br. at 20-21. Plaintiffs do not disagree with this standard—but do not come close to satisfying it. Plaintiffs have not alleged facts showing that these low-level collections employees have knowledge of, and thus can be relied upon to allege systemic forbearance practices at Navient. *CalPERS v. Chubb Corp.*, 394 F.3d 126, 148, 155 (3d Cir. 2004) (rejecting statements about national practices from "former employees who worked in local branch offices"). At base, these CWs' statements are little more than descriptions of forbearance used in a non-uniform manner. *See* CAC ¶¶ 21-27; 217-26.[12] Such allegations do not suffice to plead improper forbearance practices having a material impact on Navient's financial results. *SEPTA*, 2015 WL 3833849, at *24-27 (finding comparable confidential witness allegations insufficient to plead falsity).

**B. Plaintiffs Fail To Plead The Material Falsity Of Any Statement Regarding Compliance**

In their Opposition, Plaintiffs also try to rescue deficient allegations that Navient misrepresented its compliance efforts by arguing that the material falsity of statements like "robust compliance culture" and "customer-first approach" must be considered in context,

---

Mae, Opp. at 9-10 (citing *In re SLM Corp. Sec. Litig.*, 740 F. Supp. 2d 542, 549-51 (S.D.N.Y. 2010) (the "SLM Action"). However, the SLM Action involved different allegations about a different company at a different time—and, in any event, counsels dismissal here. The allegations regarding forbearance practices were far more robust in the SLM Action than here. *See, e.g.*, Ex. 6 at ¶¶ 85-94 (allegations from 10 CWs about forbearance policies and practices), ¶ 95 (CW describing emails communicating forbearance policy). And, as explained below, securities fraud claims were dismissed in the SLM Action because even these more robust allegations failed to support a strong inference of scienter. *See* Section III *infra*.

[12] Indeed, the alleged statements by former employees that some borrowers were moved into forbearance at all costs (CAC ¶¶ 217-18), and that military borrowers were not given timely forbearances (*id.* ¶ 223), are consistent with Navient's statements that it tailored repayment plans to individual borrowers and granted appropriate exceptions to its forbearance policies. Ex. 2 at 85. Certainly, plaintiffs have not alleged particularized facts establishing that these allegations demonstrate the falsity of Navient's statements.

because "context is key." Opp. at 15.[13] Yet context only serves to underscore the non-viability of Plaintiffs' claim. The context of these statements establishes that they are immaterial puffery.[14] Unlike Plaintiffs' authorities, Opp. at 15-16 n.13 (citing misstatements about "the source of [] success"), Navient's references to its "compliance culture" and "customer-first approach" are not tethered to specific programs or results; they are common business terms made only more generic by the non-specific context in which they were used.[15]

## III. PLAINTIFFS FAIL TO PLEAD SCIENTER

Plaintiffs' Exchange Act claims separately fail because they do not plead facts supporting any inference, much less a strong inference of scienter for any Defendant. Br. at 18-22.

---

[13] Further, Plaintiffs have not shown, with particularity or otherwise, how publicly announced settlements with military borrowers on May 13, 2014—four weeks after the onset of the Class Period—made Navient's later statements about its general compliance efforts false or misleading. *See* CAC ¶¶ 98-102, 113, 186. Nor have Plaintiffs connected the Department of Education's decision to wind down its contract with Pioneer, *id.* ¶ 156 (citing problems with rehabilitation programs), to Navient's statements about its compliance culture.

[14] *See SEC v. Kearns*, 691 F. Supp. 2d 601, 617 (D.N.J. 2010) (dismissing claims after finding that "[t]hese statements, attributing [the Company's] success to 'back to basics management discipline,' 'disciplined business practice,' and the experience and discipline of its management team, are mere 'puffery' and cannot give rise to a duty to disclose"); *see also In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 401-02 (S.D.N.Y. 2016) (deeming statements about "'effective compliance organization'… too general to cause a reasonable investor to rely on them" and finding them to be "corporate 'puffery,' which does not give rise to securities violations").

[15] Plaintiffs' attempt to distinguish the Second Circuit's decision in *City of Pontiac Policemen's & Firemen's Retirement System v. UBS AG*, 752 F.3d 173, 182-83 (2d Cir. 2014), is unavailing. In *City of Pontiac*, the Court of Appeals upheld dismissal of claims regarding statements that UBS "held its employees to the highest ethical standards and complied with all applicable laws" as puffery. Contrary to Plaintiff's argument, Opp. at 15-16 n.13, the tax laws in *City of Pontiac* were no less central to UBS's operations than loan servicing laws are to Navient's—and the challenged statements regarding Navient's compliance culture are no less "puffery" than those found non-actionable in *City of Pontiac*. Moreover, the Ninth Circuit recently reached a similar conclusion. *Local 338 v. Hewlett-Packard Co.*, 2017 WL 218026, at *6 (9th Cir. Jan. 19, 2017) (holding that statements about compliance with ethical standards—like Navient's customer-first approach—"express[] opinions as to what actions are preferable, as opposed to implying that all staff, directors, and officers always adhere to its aspirations" and are thus not actionable).

**A. Plaintiffs Fail To Plead Scienter Based On Allegations From Prior Litigation**

In their Opposition, Plaintiffs invite comparison with a prior case involving "similar claims against Navient's predecessor Sallie Mae." Opp. at 9-10, 18-19. Yet the SLM Action only further evidences Plaintiffs' failure to plead securities fraud in this case.

The allegations supporting "conscious misbehavior or recklessness" in this case are far weaker than those in the SLM Action. As here, the primary allegations supporting scienter in the SLM Action came from confidential witnesses ("CWs"). In this case, Plaintiffs present three CWs—all low-level collections personnel who had no contact with any Defendant, officer, or member of Navient's senior management. The only CW to describe management meetings did not attend those meetings—and could not accurately describe who did (claiming that participants included a Director of Collections who left Navient in 2009—five years before the Class Period). CAC ¶ 24. Such inaccurate gossip is exactly why courts do not credit "nationwide information [from] former employees who worked in local branch offices." *Chubb*, 394 F.3d at 148, 155.

By contrast, in the SLM Action, the plaintiffs presented allegations from sixteen CWs—many of whom allegedly had actual knowledge of Sallie Mae's nationwide practices and, importantly, had personal knowledge of the actions of defendants and senior management. *See generally* Ex. 6. For example, CW1 in the SLM Action was a senior analyst at Sallie Mae's headquarters who allegedly recited statements made by company officers at executive meetings. *Id.* ¶ 49. CW13 was a 23-year veteran of Sallie Mae who worked at the company's headquarters. *Id.* ¶¶ 99, 188. And CW16 was a research analyst who allegedly witnessed the CEO and CFO's visits to specific call centers. *Id.* ¶ 189.[16] No such allegations are to be found in the Complaint.

---

[16] Plaintiffs' other authorities do not support their argument. For example, Plaintiffs argue (Opp. at 18 n.18) that their CWs support scienter because in *Palm Beach Police Pension Fund v. DFC Global Corp.*, 2015 WL 3755218, at *16 (E.D. Pa. June 16, 2015), the court found scienter

Yet even these more robust allegations in the SLM Action did not establish the strong inference of scienter necessary to plead securities fraud. *SLM Corp.*, 740 F. Supp. 2d at 559. As here, plaintiffs did "not identify any contemporaneous internal document showing that the loan loss reserves were improperly calculated or that [Sallie Mae management] made a statement without foundation." *Id.* As here, the SLM Action CWs asserted "that Defendants received reports on loan origination and delinquencies, [but] the Complaint fails to describe their contents or whether they differed from [Defendants'] Class Period statements regarding delinquencies or loan loss reserves." *Id.* And also, as here, "none of the [the SLM Action] CWs claim knowledge of how the loan loss reserves were calculated" and "none had access to the aggregated data used to determine loan loss reserves." *Id.* Citing defects also present in this case, the court in the SLM Action held that allegations regarding forbearance practices failed to support scienter and dismissed claims accordingly.[17] Dismissal on these bases is warranted here as well.

**B. Plaintiffs' Other Efforts To Plead Scienter Fare No Better**

Plaintiffs' additional makeweight arguments do not sustain a strong inference of scienter. First, Mr. Remondi's statements in July 2015 explaining the increase in Navient's loan loss

where "one witness, 'who served as a senior manager in debt collection strategy, alleged that rollovers were not to be considered when setting loan loss reserves.'" First, this argument is inapposite; Plaintiffs cite no CW allegedly capable of speaking to Navient's accounting for this allowance. *Chubb*, 394 F.3d at 152 (rejecting "attempt to substantiate claims of accounting fraud by reference" to former employees in non-accounting functions). Second, this argument is misleading, as there were sixteen CWs in the *DFC Global* case, including the company's Head of Compliance and a former SVP and Chief Technology Officer. 2015 WL 3755218, at *16. Taking the weakest of the sixteen CWs in *DFC Global* and suggesting that person alone sufficed to support the allegations of scienter grossly misrepresents the facts and the court's holding.

[17] As Plaintiffs acknowledge, (Opp. at 19 n.20), the court in the SLM Action relied on separate allegations regarding suspicious stock sales to find a strong inference of scienter as to Sallie Mae's CEO and, by extension, the company. 740 F. Supp. 2d at 557-58 ("[CEO Al] Lord's trades—culminating in the December liquidation of 97% of his Sallie Mae holdings—are unusual for a corporate officer by any measure."). Plaintiffs cannot and do not make any such allegations here.

provisions do not support any inference of scienter. Br. at 19. Contrary to Plaintiffs' mischaracterization (Opp. at 19), Mr. Remondi's statements address borrowers exiting deferments, not forbearance. *See supra* Section II.B. Accordingly, the statements in no way show that Mr. Remondi had knowledge of allegedly improper forbearance practices at Navient. Moreover, on their face, Mr. Remondi's statements address information that Navient had learned during the just-completed reporting period—not *prior* to that. Mr. Remondi explained that loan balances exiting deferment in 2014 were *higher than* in 2013 and exhibited "a worse default performance as the loans came out of the in-school deferment" than Navient had observed with similar borrowers in prior periods. Ex. 7 at 6. With this evidence in hand, Navient promptly revised its ALL to account for these changes—and disclosed this development. Mr. Remondi's statements do not suggest that he (or Navient) knew prior to July 2015 that the rate of default for those loans exiting deferment would outstrip expectations.[18] Indeed, the transcript Plaintiffs cite reflects just the opposite.[19] Twisting Mr. Remondi's statements in an effort to cobble together

---

[18] Nor, as Defendants demonstrated in their Opening Brief, do Plaintiffs' allegations sustain scienter based on the "core operations" doctrine. Br. at 19-20. Plaintiffs continue to rely on this doctrine, Opp. at 20, but allege neither facts showing that "it would be 'absurd' to suggest that management was without knowledge" of the alleged misstatements' falsity, *Percoco v. Deckers Outdoor Corp.*, 2013 WL 3584370, at *5 (D. Del. July 8, 2013), nor "specific information conveyed to management and related to fraud," *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 246-47 (3d Cir. 2013). Accordingly, this is not the "rare instance" where the Third Circuit permits the "core operations" doctrine to create an inference of scienter. Br. at 19-20.

[19] Mr. Remondi explained that Navient observed a higher default rate based upon differences in the group exiting deferment that quarter compared to prior years:

> When we look a little bit deeper at these loans, we saw that this year['s] cohort had a higher percentage of borrowers who are having difficulty making payments before they had returned to school than prior portfolios, and in particular this portfolio had multiple occurrences within school deferments, meaning that these customers exited school, entered repayment, returned to school, exited school and get repayment and then went back again.

Ex. 7 at 6. Nothing in this statement suggests that Navient had this knowledge at an earlier point in time, and no other facts alleged give rise to such an inference, let alone a strong inference.

"fraud by hindsight" does not plead scienter. *Chubb*, 394 F.3d at 168.

Second, there is no basis in law or fact to find "corporate scienter" here. Opp. at 23. Plaintiffs acknowledge, as they must, that the Third Circuit has never recognized the corporate scienter doctrine. *Id.* But Plaintiffs fail to mention that the Third Circuit has repeatedly rejected its application.[20] And even if the corporate scienter doctrine were legally cognizable, conclusory assertions regarding Navient's forbearance practices fall far short of the egregious misconduct that might implicate such doctrine.[21] Plaintiffs cannot credibly disagree, having themselves made this same argument in prior litigation. *See* Ex. 8 at 13; *Zavolta*, 2010 WL 686546, at *8.

Third, contrary to Plaintiffs' assertion (Opp. at 21-22), courts routinely deem allegations of GAAP violations insufficient to plead scienter.[22] This is particularly true where, as here, Plaintiffs neither deny the company's cogent explanation of its GAAP accounting, *see* Br. at 8-10; *supra* Section II, nor explain why Defendants would carry out a fraud—and then abruptly disclose the truth in July 2015.

These allegations do not establish any plausible inference of scienter, much less the strong inference necessary to state a claim for securities fraud. Indeed, these allegations were all

---

[20] *See City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*, 442 F. App'x 672, 676 (3d Cir. 2011) (rejecting application of corporate scienter doctrine and holding that allegations fell well short of egregious conduct necessary to support corporate scienter in other Circuits); *In re Tyson Foods, Inc. Secs. Litig.,* 155 F. App'x 53, 57 (3d Cir. 2005) ("Having concluded that there is no primary liability on the part of any of the individual officers, the District Court properly held that Tyson Foods could not itself be primarily liable under the facts of this case."). Courts likewise have held that corporate scienter "does not survive the Third Circuit's bar against group pleading[.]" *Zavolta v. Lord, Abbett & Co. LLC*, 2010 WL 686546, at *7 (D.N.J. Feb. 24, 2010).

[21] *Zavolta*, 2010 WL 686546, at *10 (magnitude of alleged misconduct not sufficient to implicate corporate scienter); *In re Tyson Foods Secs. Litig.*, 2004 WL 1396269, at *12 (D. Del. June 17, 2004) ("For a corporation to [be liable], scienter must be present with respect to at least one of the officers or agents who made a false or misleading statement[.]"), *aff'd*, 155 F. App'x 53.

[22] *In re Alphapharma Secs. Litig.*, 372 F.3d 137, 151-52 (3d Cir. 2004) (affirming dismissal of claims based on GAAP violations); *In re Intelligroup Secs. Litig.*, 527 F. Supp. 2d 262 (D.N.J. 2007) (requiring plaintiffs to plead more than GAAP violations in order to establish scienter).

far stronger in the SLM Action, and yet were found there not to meet the strict standard for pleading scienter. 740 F. Supp. 2d at 559. Plaintiffs fail to state a claim of securities fraud.

## IV. PLAINTIFFS' SECURITIES ACT CLAIMS FAIL

Plaintiffs concede that a Securities Act claim "sounds in fraud" (and thus, that Rule 9(b) pleading requirements govern) if the claim is predicated on allegations of fraud—even if plaintiffs describe their claim as negligence-based, or summarily attempt to disavow fraud. Opp. at 24-25; *Chubb*, 394 F.3d at 160. They further concede that, to avoid Rule 9(b), they must "delineat[e] the allegations that support the negligence cause of action as distinct from the fraud." *In re Suprema Specialties, Inc. Secs. Litig.*, 438 F.3d 256, 273 (3d Cir. 2006); Opp. at 25. This is why Plaintiffs try facially to separate the allegations supporting their fraud claims under the Exchange Act (CAC ¶¶ 1-257) from those supporting their Securities Act claims (CAC ¶¶ 258-320). But this pleading strategy only works if the underlying allegations supporting the Securities Act claims do not themselves aver fraud. Here—as Defendants have explained (Br. at 23-24) and Plaintiffs do not dispute—Plaintiffs allege acts of intentional misconduct in support of their Securities Act claims, *id.* at 23-24 (citing CAC ¶ 287), and expressly incorporate allegations of fraud into their Securities Act claims, *id.* at 24 (citing CAC ¶¶ 287, 297). Thus, these claims "sound in fraud" and must be pled with particularity. *Suprema*, 438 F.3d at 273.

Perhaps recognizing this deficiency, Plaintiffs seek leave to amend their Complaint—to remove the fraud allegations from their Securities Act claims. Opp. at 25. Amendment here is futile, though, because Plaintiffs' "puzzle pleading" still does not satisfy Rule 8. *See supra* Section I; *Wilmington Trust*, 852 F. Supp. 2d at 490-91. Nor can Plaintiffs put their puzzle pieces together to "state a claim for relief that is plausible on its face." *See supra* Sections II, III; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Dismissal of the Securities Act claims with prejudice is warranted.

**RICHARDS LAYTON & FINGER, P.A.**

/s/ Kelly E. Farnan
Kelly E. Farnan (Bar No. 4395)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
(302) 651-7700

**LATHAM & WATKINS LLP**

Peter A. Wald (*pro hac vice*)
505 Montgomery Street
Suite 2000
San Francisco, CA 94111
Tel: 415.391.0600

Abid R. Qureshi (*pro hac vice*)
Christopher S. Turner (*pro hac vice*)
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200

Christopher R. Harris (*pro hac vice*)
885 Third Avenue
New York, NY 10022
Tel: 212.906.1200

*Counsel for Navient Corporation and the Individual Defendants*