IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LORD ABBETT AFFILIATED FUND, INC., et al., Individually and on Behalf of All Others Similarly Situated, ) ) ) ) ) Plaintiffs, ) ) v. ) ) NAVIENT CORPORATION, *et al.*, ) ) Defendants. ) ) | Civ. No. 16-112-GMS CONSOLIDATED |

**MEMORANDUM**

## I. INTRODUCTION

Lead Plaintiffs, referred to collectively as the Lord Abbett Funds, filed a consolidated amended class action complaint (the "complaint") alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act").[1] (D.I. 36). Defendant Navient Corporation ("Navient") and the Individual Defendants have moved to dismiss the complaint pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6), and the Private Securities Litigation Reform Act of 1995 (the "PSLRA").[2] (D.I. 38). The Underwriter Defendants have joined in the motion to dismiss.[3] (D.I.

---

[1] The Lord Abbett Funds are comprised of the Lord Abbett Affiliated Fund, Inc., the Lord Abbett Equity Trust-Lord Abbett Calibrated Mid Cap Value Fund, the Lord Abbett Bond-Debenture Fund, Inc., and the Lord Abbett Investment Trust-Lord Abbett High Yield Fund.

[2] The Individual Defendants are John F. Remondi, Somsak Chivavibul, William M. Diefenderfer, III, Ann Torre Bates, Diane Suitt Gilleland, Linda Mills, Barry A. Munitz, Steven L. Shapiro, Jane J. Thompson, and Barry L. Williams.

[3] The Underwriter Defendants are Barclays Capital Inc., Credit Suisse Securities USA LLC, Deutsche Bank Securities Inc., Goldman, Sachs & Co., J.P. Morgan Securities, LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, RBC Capital Markets LLC, RBS Securities Inc., and Wells Fargo Securities LLC.

1

42, D.I. 48). Navient, the Individual Defendants, and the Underwriter Defendants are referred to herein collectively as the "Defendants." The court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 15 U.S.C. § 78aa (jurisdiction for violations of the Exchange Act), and 15 U.S.C. § 77v (jurisdiction for violations of the Securities Act). For the following reasons, the motion to dismiss is granted and the complaint is dismissed with leave to amend.

## II. BACKGROUND

Navient is one of the country's largest servicers of student loans. (D.I. 43 at 3). The company was formed in April 2014 through a spin-off from Sallie Mae. (D.I. 39 at 2; D.I. 36 ¶ 81). The complaint is based on various disclosures Navient made between April 17, 2014 and December 28, 2015, which Defendants have helpfully grouped into three categories: (1) Navient's allowance for loan losses and related financial metrics, (2) Navient's compliance culture, and (3) Navient's credit facilities. (D.I. 36 ¶ 1; D.I. 39 at 7-8).

### A. Allowance for Loan Losses

Navient holds a significant portfolio of private education loans ("PELs") on which it earns net interest income. (D.I. 36 ¶ 12; D.I. 39 at 2). When Navient concludes that a PEL is uncollectible, the unrecoverable portion of the loan is charged against an allowance for loan losses. (D.I. 36 ¶ 89). Navient estimates and maintains an allowance for loan losses at a level sufficient to cover charge-offs expected over the next two years. (*Id.*). The complaint alleges that Navient manipulated loan forbearances—temporary reprieves of distressed borrowers' payment obligations—to avoid having to classify loans as delinquent. (*Id.* at ¶ 1). Reporting artificially low delinquency rates allowed Navient to report artificially low loan loss provisions. (*Id.*). Because loan loss provisions were recorded as expenses against income, Navient was consequently

2

able to report artificially high net interest income. (*Id.*). In July 2015, Navient disclosed that it increased its loan loss provision for its PEL segment of business 31.7%. (*Id.* at ¶ 177).

### B. Compliance Culture

Navient made several disclosures during the class period regarding its interactions with federal regulators. For example, on May 9, 2014, Navient disclosed that its wholly-owned subsidiary Navient Solutions, Inc. ("NSI") had received a civil investigative demand from the Consumer Financial Protection Bureau ("CFPB") related to its disclosure and assessment of late fees. (D.I. 36 ¶ 98). On May 13, 2014, the Department of Justice issued a press release announcing a $60 million settlement of allegations that NSI, Navient, and Sallie Mae charged military service members excessive rates on student loans, in violation of the Servicemembers Civil Relief Act ("SCRA"). (*Id.* at ¶ 100). In November 2014, Navient disclosed that its wholly-owned subsidiary Pioneer received a civil investigative demand from the CFPB relating to the rehabilitation of loans and collection of defaulted student debt. (*Id.* at ¶ 142). On February 27, 2015, the Department of Education announced that it was terminating its contracts with Pioneer and four other private collection agencies following a review by the Department's Federal Student Aid office, which "found that agents of [the five entities] made materially inaccurate representations to borrowers about the loan rehabilitation program." (*Id.* at ¶¶ 42, 156). On August 24, 2015, Navient disclosed that NSI received a notice from the CFPB that its Office of Enforcement was considering taking legal action against NSI regarding its disclosure and assessment of late fees. (*Id.* at ¶ 186). There are several other allegations scattered throughout the complaint regarding other regulations governing Navient, compliance, and the SCRA. (*See, e.g., Id.* at ¶¶ 19, 99, 146, 192, 221). For the reasons explained below, it is difficult to grasp the entirety of the story the complaint is trying

to tell with respect to Navient's compliance culture, other than the conclusory allegation that it was not as good as claimed.

### C. Credit Facilities

Navient made several disclosures regarding its credit facilities. For example, on October 20, 2015, Navient disclosed that its borrowing capacity under credit facilities not identified in the complaint had been reduced. (D.I. 36 ¶ 60). On December 28, 2015, Navient disclosed that the Federal Home Loan Bank of Des Moines ("FHLB-DM") was reducing the borrowing capacity available to Navient's wholly-owned subsidiary HICA Education Loan Corporation. (*Id.* at ¶ 61). The complaint alleges that these credit facilities were a source of low-cost borrowing and, therefore, the reduction in aggregate borrowing capacity, had a material impact on Navient's liquidity. (*Id.* at ¶ 62).

## III. STANDARD OF REVIEW

### A. Rule 12(b)(6)

Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Each allegation "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *In re Rockefeller Ctr. Prop., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002). The court's review is limited to the allegations in the complaint, exhibits attached to the complaint, documents incorporated by reference, and items

4

subject to judicial notice. *Siwulec v. J.M. Adjustment Serv., LLC*, 465 Fed. App'x 200, 202 (3d Cir. 2012).

## B. Rule 9(b) & the PSLRA

All securities fraud claims are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b) and the PSLRA. *Inst. Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009). Rule 9(b) requires plaintiff to "state with particularity the circumstances constituting fraud or mistake." Put another way, Rule 9(b) requires that a plaintiff set forth "the who, what, when, where and how" of the alleged fraud. *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999). Under the PSLRA, plaintiffs must: (1) "specify each statement alleged to have been misleading and the reason or reasons why the statement is misleading;" and (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007) (internal citations and punctuation omitted) (quoting 15 U.S.C. § 78u–4(b)(1) and 15 U.S.C. § 78u–4(b)(2)). "A complaint can be long-winded, even prolix, without pleading with particularity." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997).

## C. Claims that Sound in Fraud

When Securities Act claims "are grounded in fraud rather than negligence," the heightened pleading standard of Rule 9(b) applies. *Cal. Public Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 161 (3d Cir. 2004). Rule 9(b) still applies to Securities Act claims despite an express disavowal of fraud where the claims are "immersed in unparticularized allegations of fraud" and "a core theory of fraud permeates the entire" complaint. *Id.* at 160. Here, Plaintiffs have superficially divided the allegations in their complaint between the Exchange Act claims and the Securities Act claims, but they directly allege acts of fraud in support of their Securities Act claims.

5

For example, the complaint alleges that Navient and its subsidiaries "were misleading borrowers about the benefits of a federal student loan rehabilitation program," and "were engaged in improper and unlawful loan servicing and debt collection practices." (D.I. 36 ¶ 287). These are allegations of intentional misconduct. Plaintiffs also expressly incorporate by reference into their Securities Act claims allegations of fraud alleged in support of their Exchange Act claims. (*Id.* at ¶¶ 287, 297 (incorporating by reference ¶¶ 21-33, 35-38, 42-45, 56, 59-65)). The incorporated allegations include that "Navient engaged in a widespread and continual practice of concealing from investors" delinquencies in PEL loans, (*Id.* at ¶ 21); that "Navient senior management knew or recklessly disregarded [Navient's] improper practices," (*Id.* at ¶ 24); and that "developments leading to the Company's disappointing quarterly results were previously known or available to" Defendants, (*Id.* at ¶ 37). Accordingly, Plaintiffs' Securities Act claims are governed by Rule 9(b).

## IV. DISCUSSION

Defendants argue that the complaint should be dismissed, because it relies on puzzle pleading that does not satisfy either the notice pleading standard of Rule 8(a) or the heightened pleading standards of Rule 9(b) and the PSLRA. (D.I. 39 at 6). The court agrees. The 135-page complaint quotes or references over forty SEC filings and press releases covering numerous aspects of Navient's business without always identifying which portions of the statements are supposedly false or misleading. (*See, e.g.*, D.I. 36 ¶¶ 90, 99, 100, 105, 106, 111, 116, 120, 121, 133, 140, 141).[4] The purportedly misleading statements are not organized by category, making

---

4   *See Dawes v. Imperial Sugar Co.*, 975 F. Supp. 2d 666, 693 (S.D. Tex. 2013) (discussing proper and improper use of block quotes).

6

the complaint repetitive.[5] (*See, e.g., Id.* at ¶¶ 110, 127, 159, 174; *see also Id.* at ¶¶ 92, 104, 115, 132, 166). The complaint frequently cross-references other paragraphs in the complaint making it very difficult to follow. Several times, the complaint follows approximately fifty paragraphs of alleged misstatements regarding different aspects of Navient's business with a single paragraph alleging that the misstatements were false or misleading for any one of several reasons. (*Id.* at ¶ 143). "[T]he net effect of the pleading's format is to leave the reader... jumping from page to page in an attempt to link the alleged statements to the background that supposedly makes them false and misleading." *Conlee v. WMS Indus., Inc.*, 2012 WL 3042498, at *4 (N.D. Ill. July 25, 2012). "The court should not have to play connect-the-dots in order to identify the facts and trends upon which plaintiffs base their claim." *In re PetSmart, Inc. Sec. Litig.* 61 F. Supp. 2d 982, 991 (D. Ariz. 1999)).

As a result, Plaintiffs have failed to set forth a "short and plain" statement of their claims and make each allegation "simple, concise and direct" in violation of Fed. R. Civ. P. 8. At the same time, in contravention of the PSLRA, Plaintiffs have failed to craft a complaint in such a way that a reader can determine precisely which statements (or portions of statements) are alleged to be false or misleading, and the reason why each statement is false or misleading. "Until plaintiffs specifically identify the statements on which they would like to proceed and the reasons why these statements are false or misleading, neither the defendants nor the court can address these allegations with the degree of particularity required by the PSLRA." *In re Wilmington Trust Sec.*

---

[5] Several courts have expressed a preference for statements to be organized by category. *See, e.g., N. Port Firefighters' Pension-Local Option Plan v. Temple-Inland, Inc.*, 936 F. Supp. 2d 722, 739 (N.D. Tex. 2013) (ordering plaintiffs to provide a chart of plaintiffs' allegations organized under specific categories); *May v. Borick*, 1997 WL 314166, at *8 (C.D. Cal. Mar. 3, 1997) ("Plaintiffs failure to address defendants allegedly misleading statements individually, or even by category, and to state why each statement, or category of statements is misleading, renders this Courts' task, and the task of the defendants, excessively difficult.").

*Litig.*, 852 F. Supp. 2d 477, 490 (D. Del. 2012). Accordingly, Defendants' motion to dismiss is granted with leave for Plaintiffs to amend the complaint. *See Lauria v. Biosante Pharm., Inc.*, 968 F. Supp. 2d 951, 959 (N.D. Ill. 2013) (dismissing a complaint because "a plaintiff must allege facts necessary to support his fraud claim in a clear and understandable manner"); *In re PetSmart, Inc. Sec. Litig.* 61 F. Supp. 2d 982, 1001 (D. Ariz. 1999) (cautioning plaintiffs against refiling unless they can "commit to a theory of who knew what when, who did what when, and why," which "may foreclose certain litigation strategies," but is necessary to meet the pleading burdens).

## V. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (D.I. 38) is granted with leave for Plaintiffs to amend the complaint (D.I. 36). An appropriate order will be entered.

Dated: September 6, 2017

UNITED STATES DISTRICT JUDGE