IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LORD ABBETT AFFILIATED FUND, INC., *et al.*, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>NAVIENT CORPORATION, JOHN F. REMONDI, SOMSAK CHIVAVIBUL, JOHN M. KANE, WILLIAM M. DIEFENDERFER, III, ANN TORRE BATES, DIANE SUITT GILLELAND, LINDA MILLS, BARRY A. MUNITZ, STEVEN L. SHAPIRO, JANE J. THOMPSON, BARRY L. WILLIAMS, CREDIT SUISSE SECURITIES (USA) LLC, DEUTSCHE BANK SECURITIES INC., J.P. MORGAN SECURITIES LLC, RBC CAPITAL MARKETS, LLC, BARCLAYS CAPITAL INC., GOLDMAN, SACHS & CO., MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, RBS SECURITIES INC., and WELLS FARGO SECURITIES, LLC,<br><br>Defendants. | C.A. No. 16-112-MN |

### DEFENDANTS' SUR-REPLY TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVES, AND APPOINTMENT OF CLASS COUNSEL

| **LATHAM & WATKINS LLP** | **RICHARDS LAYTON & FINGER, P.A.** |
|---|---|
| Peter A. Wald<br>505 Montgomery Street<br>Suite 2000<br>San Francisco, CA 94111<br>Tel: (415) 391-0600<br><br>Abid R. Qureshi<br>Christopher S. Turner<br>555 Eleventh Street, NW<br>Suite 1000<br>Washington, D.C. 20004<br>Tel: (202) 637-2200 | Kelly E. Farnan (#4395)<br>One Rodney Square<br>920 N. King Street<br>Wilmington, DE 19801<br>Tel: (302) 651-7700<br>farnan@rlf.com<br><br>*Attorneys for Navient Corporation and the Individual Defendants* |

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT..........................................................................................................................2

    A. The "Spin Shares"..........................................................................................................2

        1. The Complaint Does Not Allege Claims Based On Navient "Spin Shares"........................................................................................................2

        2. Shares Received Via Dividend From SLM Corporation's Reorganization Are Not Actionable Under Section 10(b)..........................4

    B. The Navient Notes ........................................................................................................6

        1. Plaintiffs Have Not Shown That Each Of The Navient Notes Trades In An Efficient Market..................................................................6

        2. *Affiliated Ute* Does Not Apply To Plaintiffs' Claims...............................10

III. CONCLUSION.....................................................................................................................10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997) ...........................................................................................7

*Cammer v. Bloom*,
  711 F. Supp. 1264 (D.N.J. 1989) .....................................................................................9

*City of Cape Coral Mun. Firefighters' Ret. Sys. v. Emergent Biosol'ns, Inc.*,
  322 F. Supp. 3d 676 (D. Md. 2018) .................................................................................7

*Costelo v. Chertoff*,
  258 F.R.D. 600 (C.D. Cal. 2009) .................................................................................3, 4

*In re Countrywide Fin. Corp. Sec. Litig.*,
  273 F.R.D. 586 (C.D. Cal. 2009) .....................................................................................7

*Deutschman v. Ben Corp.*,
  761 F. Supp. 1080 (D. Del. 1991) ....................................................................................5

*In re DVI, Inc. Sec. Litig.*,
  639 F.3d 623 (3d Cir. 2011) .........................................................................6, 8, 9, 10

*Goldberg v. Hankin*,
  835 F. Supp. 815 (E.D. Pa. 1993) ....................................................................................4

*In re Penn Cent. Sec. Litig.*,
  494 F.2d 528 (3d Cir. 1974) .............................................................................................5

*Richie v. Blue Shield of Cal.*,
  2014 U.S. Dist. LEXIS 170446 (N.D. Cal. Dec. 9, 2014) ...............................................3

*Roofer's Pension Fund v. Papa*,
  2019 WL 6015392 (D.N.J. Nov. 14, 2019) .....................................................................7

*Skeway v. China Nat. Gas, Inc.*,
  304 F.R.D. 467 (D. Del. 2014) .........................................................................................5

*Waggoner v. Barclays PLC*,
  875 F.3d 79 (2d Cir. 2017) ...............................................................................................7

**Statutes**

Exchange Act ..........................................................................................................................10

Exchange Act Section 10(b) ................................................................................................1, 4, 6

**I.   INTRODUCTION**

Defendants do not contest that Navient common stock trades in an efficient market, and therefore, that a class of Navient common stock purchasers asserting claims under Section 10(b) of the Exchange Act may be certified.[1] Defendants do contest, however, Plaintiffs' attempt to include in the certified Section 10(b) class two sets of securities for which class treatment is not appropriate: the Spin Shares and the Navient Notes. Plaintiffs' Reply brief (D.I. 129 ("Reply")) and new expert report only underscore the conclusion that these securities must be excluded.

*First*, Plaintiffs cannot now massively expand the putative class by including the Spin Shares[2], as claims for these shares were never pled. Furthermore, had Plaintiffs sought leave to add them, Defendants would have successfully opposed on futility grounds. Procedurally, Plaintiffs baldly assert that the Spin Shares "have been in this Action since its inception." Reply at 3-4. But their Reply shows just the opposite—as they offer no rebuttal to Defendant's quotation of the Second Amended Complaint's (D.I. 59 ("SAC" or "Complaint")) plain language, which consistently asserts claims based only on stock "*purchased*… at the prices they paid." SAC ¶ 158 (emphasis added); Opp. at 5. Substantively, Plaintiffs' passive receipt of the Spin Shares via dividends issued in connection with SLM Corporation's 2014 reorganization does not—as a matter of law—constitute a "purchase or sale" of securities under Section 10(b). *See infra* § II.A.

*Second*, Plaintiffs' attempt to include the Navient Notes in the Section 10(b) class fares no better. Plaintiffs and their expert fail to prove that any, let alone each of the 210 different Navient Notes trades efficiently. Their reliance on "operational factors," dated out-of-circuit authority, and

---

[1] Further, Defendants do not challenge Plaintiffs' proposed class for the Securities Act claims, which is limited to purchasers of three specific Navient bonds who are not required to prove reliance. D.I. 118 ("Opp.") at 1 n.1.

[2] "Spin Shares" has the same meaning in Defendants' Opposition Brief, and is defined as Navient shares received via dividend from the 2014 spin-off from SLM Corporation. Opp. at 1.

a new, contrived correlation analysis (submitted for the first time on reply) only highlights their inability to prove, as they must under binding Third Circuit authority, that *each* note trades efficiently. *See infra* § II.B.

## II.   ARGUMENT

### A.   The "Spin Shares"

#### 1.   The Complaint Does Not Allege Claims Based On Navient "Spin Shares"

Plaintiffs cannot credibly claim that their Complaint alleges a class consisting of anyone other than actual purchasers of Navient securities. Indeed, Plaintiffs allege that Defendants' supposed misstatements "caused the price of Navient securities to be artificially inflated, and caused significant damages to *purchasers* of Navient stock and notes." SAC at 1 (emphasis added). Plaintiffs' Complaint is replete with similar allegations, including that the putative class "*paid* artificially inflated prices for Navient publicly traded securities" and "would not have *purchased* Navient publicly traded securities at the prices they *paid*," (SAC ¶ 158) (emphasis added). Plaintiffs cannot and do not deny that their own word choice limits the asserted claims to *purchasers* of Navient stock—and excludes passive recipients of Spin Shares. *See* Opp. at 5.[3] Plaintiffs try to ignore the plain language of their claims, and instead exaggerate discrete Complaint references to supposed misstatements made in connection with SLM Corporation's 2014 reorganization. But this gambit obviously fails; of the five paragraphs Plaintiffs cite, only *two* mention the shares received via dividend as part of the 2014 Spin—and *none* addresses how Plaintiffs' claims, which are expressly predicated on the allegation that they *purchased* purportedly overpriced securities, can also be made to include securities for which no artificially inflated prices

---

[3] Plaintiffs appear to chastise Defendants for not seeking dismissal of a claim based on the "Spin Shares." Reply at 4. Yet, this makes no sense—as Plaintiffs did not *assert* any such claim.

were ever paid.

Recognizing the insufficiency of their pleading allegations, Plaintiffs belatedly attempt to amend *sub silentio* the pled class definition, by referring for the first time in their class certification motion to securities "otherwise acquired"—here, the Spin Shares. *Compare* SAC ¶ 225 (limiting class to "those who **purchased**" Navient securities) *with* D.I. 108 ("Mot.") at v (expanding class to "[a]ll persons or entities who **purchased or otherwise acquired**" Navient securities). This transparent shift simply highlights Plaintiffs' failure to plead these claims in their Complaint, and belies their new contention that "purchased" shares *always included* the Spin Shares. Opp. at 5-7.

Equally untenable are Plaintiffs' other strained efforts to establish this proposition. Reply at 3-4. *First*, that Lead Plaintiff's certification includes the Spin Shares among its Navient holdings has no bearing on the proposed class definition. *See, e.g.*, *Richie v. Blue Shield of Cal.*, 2014 U.S. Dist. LEXIS 170446 at *41 (N.D. Cal. Dec. 9, 2014) ("[C]ourts will not certify classes different from, or broader than, a class alleged in the complaint without plaintiff moving to amend the complaint."); *Heastie v. Cmty. Bank of Greater Peoria*, F.R.D. 669, 672 n.3, (N.D. Ill. 1989) (certifying class as originally proposed in the complaint where plaintiff "apparent[ly]…changed her theory of the case, but [did] not amend[] her complaint"). *Second*, that Defendants requested documents regarding Plaintiffs' holdings (Reply at 3) does not suggest that their new Spin Shares claims are, or "have always been" in this litigation; on the contrary, Defendants understood that the Spin Shares were *excluded* from the case, and sought to understand the portion of Plaintiffs' holdings reflecting shares purchased versus those received via dividend.

In any event, courts are bound by the class definition alleged in the operative *complaint*— not certifications, discovery responses, or any other filing or submission. *See Costelo v. Chertoff*, 258 F.R.D. 600, 604-05 (C.D. Cal. 2009) ("The Court is bound to class definitions provided in the

3

complaint and, absent an amended complaint, will not consider certification beyond it."). The controlling question is whether the *SAC* pleads claims based upon the Spin Shares—and as Plaintiffs' reply brief demonstrates, it does not. *See id.*

### 2. Shares Received Via Dividend From SLM Corporation's Reorganization Are Not Actionable Under Section 10(b)

Faced with this reality, Plaintiffs now assert that they should be deemed to have "purchased" those shares because Navient was a "substantially different company" than its predecessor. Reply at 4-5. That, of course, is not the operative legal test. As set forth in Defendants' Opposition, Plaintiffs' own evidence establishes that Navient Corporation was the product of a corporate reorganization. *See* Opp. at 7-8. Plaintiffs effectively concede this point, as they advance no facts equating the 2014 Spin to mergers and other traditional corporate transactions found actionable under Section 10(b). *See* Reply at 5. Instead, Plaintiffs focus on differences between the Spin's two offspring: Navient and SLM BankCo. *Id.* But this misses the mark entirely. *Id.* Defendants do not deny that Navient and SLM BankCo. are entities with distinct business lines—indeed, that was the Spin's very purpose: to reorganize SLM Corporation's assets. But there was no material change in shareholders' ownership interests after the Spin—as exists in a Section 10(b) "purchase or sale"[4]—because the pre-Spin assets and liabilities of SLM Corporation became, and were identical to the post-Spin assets and liabilities of Navient ***plus*** SLM BankCo. *See Goldberg v. Hankin*, 835 F. Supp. 815, 817-18 (E.D. Pa. 1993) (shares acquired in merger were not actionable because "the Bank's merger was nothing more than a corporation deciding to reorganize and diversify its line of business").[5]

---

[4] *See* Opp. at 8 (citing *Gelles v. TDA Indus., Inc.*, 1993 WL 275216, at *6 (S.D.N.Y. July 19, 1993) (outlining a multi-factor test used to assess what constitutes a "purchase or sale" for purposes of Rule 10b-5 liability, including whether there was a "transfer of ownership or control of the security," consideration, and invocation of the "remedial purpose" of the Exchange Act)).

[5] Plaintiffs' own expert confirms this conclusion; he testified that "the SLM Corporation shares

None of Plaintiffs' cited cases supports their contention that they "purchased" Navient stock under the Exchange Act. *See In re Penn Cent. Sec. Litig.*, 494 F.2d 528, 534 (3d Cir. 1974) (affirming that a share exchange does not constitute a "purchase or sale" under the Exchange Act); *Deutschman v. Ben Corp.*, 761 F. Supp. 1080, 1085 (D. Del. 1991) (holding that stock was "otherwise acquired" under the Exchange Act where acquisitions required "the putative investor to exercise or, at the very least to possess the ability to exercise, some discretion with respect to the payment of funds or acquisition of securities.").[6] In fact, those cases demonstrate exactly the opposite: where, as here, stock is distributed via dividend (or pursuant to a forced sale), the passive receipt of that stock is *not* a "purchase" under the Exchange Act. *See* Opp. at 8-9 (citing *Isquith v. Caremark Int'l*, 136 F.3d 531, 534 (7th Cir. 1998) (holding that where owners of stock "received one share of Caremark stock for every four shares of Baxter," plaintiffs "no more 'bought' Caremark stock than the recipient of a stock dividend")). Investors who received Navient stock as part of the 2014 Spin were prior holders of SLM Corporation shares, and received the Spin Shares through an automatic dividend distribution. *See* Ex. 5 (Apr. 10, 2014 SLM 8-K). The dividend distribution itself involved no action on the part of Spin Share recipients. *Id.* And as Plaintiffs' own expert acknowledges (D.I. 119, Ex. 2 (Hartzmark Tr.) at 85:16-86:4), the only "investment decision" involved was the shareholders' purchase of *SLM Corporation* stock—which occurred before the class period (and thus is not actionable), and afforded those shareholders the right to receive Navient shares via the reorganization/dividend. In sum, the 2014 Spin was not a "purchase or sale" of securities as required for claims under the Exchange Act, and Plaintiffs' untimely effort

---

and the Navient shares were the same." D.I. 119, Ex. 2 (Hartzmark Tr.) at 87:12-15.
[6] Plaintiffs citation of *Skeway v. China Nat. Gas, Inc.,* 304 F.R.D. 467 (D. Del. 2014) is curious, as that case does not reference any plaintiffs beyond those who actually *purchased* the subject securities.

to amend their Second Amended Complaint by adding the phrase "or otherwise acquired" in their class certification motion should be rejected.

**B.     The Navient Notes**

### 1. Plaintiffs Have Not Shown That Each Of The Navient Notes Trades In An Efficient Market

Plaintiffs also improperly seek to include purchasers of 210 different Navient Notes in their proposed Exchange Act class. The parties agree that under a "fraud on the market" theory, proof of reliance by purchasers of these Notes is a class-wide issue—and thus, purchasers of each Note are appropriate for inclusion in the Section 10(b) class *only* if Plaintiffs prove that such Note trades efficiently. Br. at 11; Opp. at 10; *In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 633 (3d Cir. 2011). Plaintiffs' Reply (at 6-10), and their new expert report, underscore that they are unable to meet this burden.[7]

#### a. Plaintiffs' "Operational Factors" Do Not Prove Market Efficiency

Plaintiffs contend "operational factors" prove that each and every one of the 210 Navient Notes they include in their proposed Section 10(b) class traded in an efficient market. Reply at 7. But these factors (*e.g.*, Navient's market capitalization and Form S-3 eligibility) simply show that Navient is a large, public corporation; they are no more "proof" of market efficiency for each Note at issue than a person's height is proof that he or she is good at basketball. Plaintiffs' position finds no support in logic, fact, or law.

*First*, Plaintiffs' argument proves too much. If the "operational factors" upon which

---

[7] In their Reply, Plaintiffs resort to arguing that "Defendants' expert does not opine that the market for the Navient Notes was inefficient." Reply at 6-7. Setting aside Plaintiffs' incorrect premise that there is a single, unitary market for Navient Notes (which there is not, *see infra*), this transparent "burden shifting" effort simply ignores that *Plaintiffs* must demonstrate market efficiency, *see DVI*, 633 F.3d at 631—and constitutes a tacit admission that they cannot do so.

Plaintiffs rely were sufficient to prove efficiency, then it would compel the conclusion that *every* security issued by *every* large public company trades efficiently. That plainly is not the case, as courts routinely decline to find that large companies' securities trade in efficient markets. *See, e.g.*, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1425 (3d Cir. 1997).

*Second*, Plaintiffs' position runs contrary to empirical fact. Plaintiffs cannot credibly contend that this Court should rely on these operational factors to *guess* how securities *might* trade—when we can *see* how the *securities at issue here actually did trade*, and that empirical evidence *rebuts* market efficiency. *See* Opp. at 15-18; D.I. 119, Ex. 3 (Stulz Rpt.) ¶ 106 & Ex. 8 (showing, *e.g.*, that the price of certain Notes *increased* after allegedly adverse disclosures).

*Third*, Plaintiffs' cited cases (Reply at 7) lend no support to their argument. In each case, the court held that the company's *common stock* presumptively traded in an efficient market because it traded on the New York Stock Exchange.[8] Defendants do not disagree, and have not challenged the efficiency of the market for the NYSE-traded Navient common stock, Opp. at 10; however, Defendants *do* challenge Plaintiffs' failure to demonstrate that each of the Navient Notes similarly traded in an efficient market.

        b.    **Plaintiffs' Analysis On Reply Only Highlights Their Failure To Demonstrate Market Efficiency For The Navient Notes**

Unable to prove that any, let alone *each* of the 210 Navient Notes traded efficiently, Plaintiffs resort to the *assertion* that all 210 Navient Notes traded efficiently in a *single* market. *See* Reply at 8. Plaintiffs base this assertion on their expert's interpretation of a legal opinion in the *Enron* litigation, which has since been deemed dated and "unpersuasive precedent." *In re*

---

[8] *See City of Cape Coral Mun. Firefighters' Ret. Sys. v. Emergent Biosol'ns, Inc.*, 322 F. Supp. 3d 676, 689 (D. Md. 2018); *Roofer's Pension Fund v. Papa*, 2019 WL 6015392, at *10 (D.N.J. Nov. 14, 2019) (also deeming efficient the market for shares on a related exchange); *Waggoner v. Barclays PLC*, 875 F.3d 79, 97 (2d Cir. 2017) (deeming efficient the market for ADRs, which are "effectively Barclays' common stock on the New York Stock Exchange").

*Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 620 (C.D. Cal. 2009). In doing so, Plaintiffs and their expert (literally) *ignore* binding Third Circuit authority, which holds that Plaintiffs cannot treat the 210 Navient Notes as trading in a single market, but instead must show that the market in which "each [security] traded was efficient." *DVI,* 639 F.3d at 633. This blindness is plainly willful—as Plaintiffs' expert, Dr. Hartzmark, was also the plaintiffs' expert in *DVI*.

The *DVI* case also outlines the narrow circumstances under which it may be appropriate to use information about one note in attempting to show market efficiency for a different note. 639 F.3d at 633 & n.15. In *DVI*, the Court "credited the plaintiffs' expert [Dr. Hartzmark's] report showing a 99.2% price correlation between the tranches"—a standard correlation analysis that Dr. Hartzmark performed using *daily returns*. *Id.* Because the *DVI* plaintiffs were able to show that prices of the two notes moved virtually identically, the court permitted them to use price data for one note in analyzing the other. *Id.*

Despite knowing that *DVI* is controlling precedent and knowing the precise analysis undertaken in that case (since he himself performed the testing), Dr. Hartzmark first elected to *assume* that the 210 Navient Notes traded in a single market—and not to perform any correlation analysis at all. And, it is obvious why he did so: a standard correlation analysis of the Navient Notes using *daily returns*—the very same test that Dr. Hartzmark performed in *DVI*—shows that trading in these Notes is *not correlated*.[9] Opp. at 14-15; D.I. 119, Ex. 3 (Stulz Rpt.) ¶ 71 & Ex. 2.[10] Put differently, the Navient Notes unquestionably fail this test.

---

[9] Here, too, we need not guess his motive. Dr. Hartzmark testified in this case that he performed a standard correlation analysis using daily returns in *DVI* because those bonds were "fungible instruments" and "were the same bonds," "so movements would be in the same amounts"—*i.e.*, they would pass this correlation test. D.I. 119, Ex. 2 (Hartzmark Tr.) at 184:8-13. The Navient Notes, of course, would not—and do not—behave similarly, and as a result, do not pass this test.
[10] Even the 13 Navient Notes that Dr. Hartzmark selectively deems "Exemplar Notes" spectacularly fail his own *DVI* correlation test. That test compared the price movements of paired

Then, in reply, confronted with Dr. Stulz's (Defendants' expert's) analysis, Plaintiffs submitted a 49-page reply report from Dr. Hartzmark, featuring a new analysis. D.I. 130, Ex. Z at ¶¶ 67-72 & Exs. I-III. Yet rather than use *daily* returns to test how each security responded to news issued on the same day—as he did in *DVI,* and *every test that he performed in his initial report*—in his new report Dr. Hartzmark used *weekly* and *monthly* returns. *Id.* This shift in methodology is an obvious contrivance—and completely undermines Dr. Hartzmark's analysis.

*First*, Dr. Hartzmark's use of weekly and monthly returns—and his new contention that the correlation of daily returns on bonds should not be expected (D.I. 130, Ex. Z at ¶¶ 63-65), despite his contrary position in *DVI* and his opening report here[11]—strongly undermines his position that the Navient Notes traded in efficient markets. By arguing for monthly correlations, Dr. Hartzmark *admits* that it could take up to one month for each Navient Note to process new, material information—which does not meet his (or anyone's) definition of an "efficient market." *See Cammer v. Bloom*, 711 F. Supp. 1264, 1276 n.17 (D.N.J. 1989) ("An efficient market is one which rapidly reflects new information in price.").

*Second,* the entire point of Dr. Hartzmark's new analysis is to argue that the 210 Navient Notes trade so similarly that he can pool them together and analyze them as a single market. But when he pooled the Notes together and analyzed how that pool traded in his initial report, *he used daily returns*. D.I. 106, Ex. I at Exs. XXII, XXIII. Because Dr. Hartzmark now argues that the daily returns of bonds are not correlated—or even appropriate for evaluating efficiency—his new

---

notes—and in this case, half of the 78 pairs tested showed *no* significant correlation, while 16 pairs were *negatively* correlated (*i.e.*, tended to move in opposite directions). D.I. 119, Ex. 3 (Stulz Rpt.) ¶ 71 & Ex. 2.

[11] Dr. Hartzmark's new claim that "[n]o serious observer of corporate bond markets would expect daily bond return data" to track each other closely (D.I. 130, Ex. Z at ¶ 64), serves only to point a critical finger at himself—since Dr. Hartzmark himself used daily correlation tests of bond data in *DVI.* 639 F.2d at 633 n.15.

analysis of how the Navient Notes traded squarely violates his opening report (and his *DVI* report).

*Third*, even using these cherry-picked longer-term returns, the price changes of these bonds are not closely correlated. Dr. Hartzmark finds an average monthly correlation of 71%, and an average weekly correlation of 34%—much closer to no correlation at all than to near perfect correlation. D.I. 130, Ex. Z at ¶¶ 68-69. By contrast, the analysis by Dr. Hartzmark deemed sufficient in *DVI* showed a 99.2% price correlation between notes.

Upon the Court's request and with leave of Court, Dr. Stulz is prepared to submit a short rebuttal report walking through the numerous specific flaws in Dr. Hartzmark's reply report.[12]

### 2. *Affiliated Ute* Does Not Apply To Plaintiffs' Claims

Unable to prove efficient markets for the Navient Notes, Plaintiffs are left to argue that the challenged SAC statements are really *omissions*, which trigger a presumption of reliance. Reply at 10. But Plaintiffs actually *allege* that Defendants misstated their forbearance practices, SAC ¶¶ 33-49, understated Navient's loan loss, *id.* ¶¶ 50-63, and misrepresented both their access to credit facilities and their liquidity risk, *id.* ¶¶ 136-45. Plaintiffs enumerate and quote the specific misrepresentations they challenge in a 21-page Appendix to the SAC. SAC App'x A. These are not "omissions" by any measure, and nothing in their Reply—or the authorities cited therein and addressed in Defendants' Opposition (at 18-20)—suggests otherwise.

### III. CONCLUSION

For these reasons, and those set forth in Defendants' Opposition (D.I. 118), Defendants respectfully request that the Court deny Plaintiffs' Motion to include the Spin Shares and Navient Notes in their Exchange Act class.

---

[12] Notably, neither Plaintiffs' reply brief nor either of Dr. Hartzmark's reports provides any analysis of the 197 Navient Notes that are not deemed "Exemplar Notes." Opp. at 16-18.

**RICHARDS LAYTON & FINGER, P.A.**

_/Kelly E. Farnan/_____
Kelly E. Farnan (#4395)
One Rodney Square
920 N. King Street
Wilmington, DE  19801
Tel: (302) 651-7700


**LATHAM & WATKINS LLP**

Peter A. Wald
505 Montgomery Street
Suite 2000
San Francisco, CA 94111
Tel: (415) 391-0600

Abid R. Qureshi
Christopher S. Turner
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004
Tel: (202) 637-2200

Christopher R. Harris
885 Third Avenue
New York, NY 10022
Tel: (212) 906-1200

*Attorneys for Navient Corporation and the Individual Defendants*