IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LORD ABBETT AFFILIATED FUND, INC., et al., Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civ. No. 16-112 (MN) CONSOLIDATED |
| NAVIENT CORPORATION, *et al.*, | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Joel Friedlander, Christopher M. Foulds, Christopher P. Quinn, FRIEDLANDER & GORRIS, P.A., Wilmington, DE; Salvatore Graziano, Jeremy P. Robinson, Jesse Jensen, Ryan Dykhouse, BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP – Attorneys for Plaintiffs.

Kelly E. Farnan, RICHARDS LAYTON & FINGER, P.A., Wilmington, DE; Peter A. Wald, LATHAM & WATKINS LLP, San Francisco, CA; Abid R. Qureshi, Christopher S. Turner, LATHAM & WATKINS LLP, Washington, D.C.; Christopher R. Harris, LATHAM & WATKINS LLP, New York, NY – Attorneys for Navient Corporation and the Individual Defendants.

Kevin G. Abrams, John M. Seaman, ABRAMS & BAYLISS LLP, Wilmington, DE; Adam S. Hakki, Daniel C. Lewis, and Anthony D. Marinello, SHEARMAN & STERLING LLP – Attorneys for Defendants Credit Suisse Securities (USA) LLC, Deutsche Bank Securities Inc., J.P. Morgan Securities LLC, RBC Capital Markets, LLC, Barclays Capital Inc., Goldman, Sachs & Co., Merrill Lynch, Pierce, Fenner & Smith Incorporated, RBS Securities Inc., and Wells Fargo Securities, LLC.

August 25, 2020
Wilmington, Delaware



**NOREIKA, U.S. DISTRICT JUDGE:**

## I.   INTRODUCTION

Plaintiffs, referred to collectively as the Lord Abbett Funds, have asserted claims against Navient Corporation, the Individual Defendants, and the Underwriter Defendants (collectively, "the Defendants") pursuant to §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 ("the Exchange Act") and §§ 11, 12(a)(2), and 15 of the Securities Act of 1933 ("the Securities Act").[1] (D.I. 59).  Currently pending before the Court are Plaintiffs' motion pursuant to Fed. R. Civ. P. 23 for certification of the class, appointment of class representatives, and appointment of class counsel (D.I. 104), and Plaintiffs' motion for leave to file a brief in response to Defendants' sur-reply (D.I. 161).  For the following reasons, Plaintiffs' motion for class certification is granted-in-part and denied-in-part, and Plaintiffs' motion for leave is denied as moot.

## II.   STANDARD OF REVIEW

To obtain class certification, plaintiffs must establish the four elements of Rule 23(a) along with one subpart of Rule 23(b).  Fed. R. Civ. P. 23.  Under Rule 23(a), plaintiffs must show that: (1) the class is so numerous joinder of all the members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the parties' claims or defenses are typical of the class ("typicality"); and (4) the representative parties fairly and adequately protect the interests of the class ("adequacy").  *Warfarin Sodium Antitrust Litig.*,

---

[1]      The "Lord Abbett Funds" are comprised of the Lord Abbett Affiliated Fund, Inc., the Lord Abbett Equity Trust-Lord Abbett Calibrated Mid Cap Value Fund, the Lord Abbett Bond-Debenture Fund, Inc., and the Lord Abbett Investment Trust-Lord Abbett High Yield Fund. The "Individual Defendants" are John F. Remondi, Somsak Chivavibul, William M. Diefenderfer, III, Ann Torre Bates, Diane Suitt Gilleland, Linda Mills, Barry A. Munitz, Steven L. Shapiro, Jane J. Thompson, and Barry L. Williams.  The "Underwriter Defendants" are Barclays Capital Inc., Credit Suisse Securities USA LLC, Deutsche Bank Securities Inc., Goldman, Sachs & Co., J.P. Morgan Securities, LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, RBC Capital Markets LLC, RBS Securities Inc., and Wells Fargo Securities LLC.

391 F.3d 516, 527 (3d Cir. 2004).  Once the requirements of Rule 23(a) are met, plaintiffs must show that the class can be maintained under any one of three subparts in Rule 23(b).  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997).  Here, Plaintiffs seek certification under subpart (b)(3), which requires the Court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

## III.   DISCUSSION

Plaintiffs have asked the Court to certify an Exchange Act class and a Securities Act class. The Exchange Act class is comprised of "[a]ll persons and entities who purchased or otherwise acquired Navient's publicly traded securities, or sold Navient put options, from April 17, 2014 through September 29, 2015, inclusive."  (D.I. 105 at 3).  The Securities Act class is comprised of "all persons and entities who purchased or otherwise acquired Navient's 5.000% Senior Notes due 2020 (CUSIP 63938CAA6), 5.875% Senior Notes due 2024 (CUSIP 63938CAB4), and 5.875% Senior Notes due 2021 (CUSIP 63938CAC2) from November 3, 2014 through December 28, 2015, inclusive."  (*Id*.).

Defendants do not challenge Plaintiffs' proposed class for the Securities Act claims or the entire scope of the proposed class for Exchange Act claims.  (D.I. 118 at 1 n1).  Instead, Defendants make two discrete challenges.  Defendants argue that the Exchange Act class should not include persons who received shares as part of Navient's formation through a spin-off from Sallie Mae

(i.e., "the Spin Shares") or persons who purchased Navient's notes.  (*Id*.).  Each challenge is addressed in turn.[2]

### A.      Spin Shares

Defendants argue that the Spin Shares should not be included in the Exchange Act class, because they were not included in the definition of the class pleaded in the second amended complaint.  (D.I. 118 at 5).  The second amended complaint defined the proposed class as "consisting of all those who *purchased* (1) the publicly traded securities of Navient during the Class Period; (2) securities in or traceable to the Company's 2014 Debt Offering; and/or (3) securities in or traceable to the Company's 2015 Debt Offering."  (D.I. 59 ¶ 225).  According to Defendants, Sallie Mae shareholders did not "purchase" their Spin Shares, but instead passively received those shares through a dividend.  (D.I. 118 at 5).  As a result, Defendants contend, Plaintiffs' motion for class certification improperly amends the complaint and "massively" expands the class size.  (*Id*. at 6).

Courts in other circuits have held that "a plaintiff may only seek to certify a class as defined in a complaint – courts will not certify classes different from, or broader than, a class alleged in the complaint without plaintiff moving to amend the complaint."  *Richie v. Blue Shield of Cal.*, No. C-13-2693 EMC, 2014 WL 6982943, at *13 (N.D. Cal. Dec. 9, 2014).  But "Courts of this circuit are not bound by the class definition proposed in the Complaint."  *Barenbaum v. Hayt, Hayt & Landau, LLC*, C.A. No. 18-4120, 2019 WL 4305761, at *9 n.3 (E.D. Pa. Sept. 10, 2019).  Thus, multiple courts in this circuit have rejected the argument that plaintiffs are bound by the class defined in the complaint.  *See Schultz v. Midland Credit Mgmt., Inc.*, C.A. No. 16-4415, 2020 WL

---

[2]      Because Defendants do not challenge any other criteria for certifying the class and Plaintiffs' papers demonstrate that, with the exception of these challenges, class certification is proper, the Court will only address these two discrete challenges.

3026531, at *4 (D.N.J. June 5, 2020); *Barenbaum, LLC*, 2019 WL 4305761, at *9 n.3); *Swank v. Wal-Mart Stores, Inc*., 2:13-cv-1185, 2018 WL 2684102, at *3 (W.D. Pa. June 5, 2018); *Carney v. Goldman*, C.A. No. 15-260-BRM-DEA, 2018 WL 2441766, at *10 (D.N.J. May 30, 2018); *Kalow & Springut, LLP v. Commence Corp*., 272 F.R.D. 397, 401 (D.N.J. 2011); *Gates v. Rohm & Haas Co*., 265 F.R.D. 208, 215 n. 10 (E.D. Pa. 2010); *Rivera v. Brickman Group, Ltd*., C.A. No. 5-1518, 2005 WL 8177343, at *5 (E.D. Pa. Nov. 10, 2005); *Weisfeld v. Sun Chem. Corp*., 210 F.R.D. 136, 138 (D.N.J. 2002) *aff'd* 84 F. App'x (3d Cir. 2004).  Defendants did not cite and the Court did not find any case from this circuit in which plaintiffs were bound by the class proposed in their complaint or where plaintiffs had to meet certain requirements before any changes to the class definition was allowed.  (*See* D.I. 118 at 5; D.I. 157 at 3).  Accordingly, this Court rejects Defendants' argument that Plaintiffs may not seek to certify a class that differs from the class proposed in the complaint.

Defendants further argue that any claims based on the Spin Shares should be dismissed "for failing to establish § 10(b)'s 'purchase or sale' requirement."  (D.I. 118 at 7).  "In deciding whether to certify a class, the Court's analysis frequently overlaps with 'the merits of the plaintiff's underlying claim.'"  *Schultz*, 2020 WL 3026531, at *2 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  But "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).  Thus, merits questions may be considered "only to the extent" that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.  *Id*.  Because

Defendants do not link their argument about the purchase and sale requirement under Section 10(b) to any requirements in Rule 23, the Court will not consider it.[3]

### B.   Navient Notes

Under Rule 23(b)(3), Plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  Defendants argue that Plaintiffs' Exchange Act class cannot satisfy the predominance requirement for the element of reliance.[4]  (D.I. 118 at 10-20).  "Common questions of law and fact predominate when issues subject to generalized proof and applicable to the class as a whole predominate over, and are more substantial than, issues that are subject to individualized proof." *Spagnola v. Chubb Corp*., 264 F.R.D. 76, 98 (S.D.N.Y. 2010).  Absent a theory for presuming that the entire class relied on a defendant's alleged misrepresentations, individual issues of reliance will usually predominate.  *In re Countrywide Fin. Corp. Sec. Litig*., 273 F.R.D. 586, 608 (C.D. Cal. 2009).  Thus, the Supreme Court has identified two circumstances in which courts may employ a rebuttable presumption of reliance for class actions: where there has been "fraud on the market," *see Basic Inc. v. Levinson*, 485 U.S. 224, 248 (1988), and where the defendant failed to disclose facts it was under a duty to disclose, *see Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153 (1972).  The parties dispute whether Plaintiffs have shown that they are entitled to rely on either presumption.

---

[3]     The Court notes that the deadline for case dispositive motions is December 14, 2020. (D.I. 152).

[4]     To establish a violation of § 10(b) and Rule 10b–5, a plaintiff mush show: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) *reliance upon the misrepresentation or omission*; (5) economic loss; and (6) loss causation."  *Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc*., 552 U.S. 148, 157 (2008) (emphasis added).

### 1.    *Basic* **Fraud on Market Presumption**

"The fraud-on-the-market theory is premised on the existence of an efficient market." *City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc*., 713 F. Supp. 2d 378, 393 (D. Del. 2010).  The theory presumes that "the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations." *Halliburton Co. v. Erica P. John Fund, Inc*., 573 U.S. 258, 268 (2014) (quoting *Basic*, 485 U.S. at 246).  Thus, a plaintiff who buys or sells securities at a price set by an efficient market inherently does so in reliance on all public, material misrepresentations.  *Halliburton*, 573 U.S. at 268.  Defendants contend that Plaintiffs are not entitled to a fraud-on-the-market presumption, because they have not shown that the market for Navient's notes is efficient.  (D.I. 118 at 10-18).

To determine whether a market is efficient, courts consider the following five factors (referred to as the *Cammer* factors): (1) whether the security trades at a large weekly volume; (2) whether a significant number of analysts follow and report on the security; (3) whether the security has market makers; (4) whether the company is eligible to file an S-3 registration statement; and (5) whether empirical facts show a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the security's price.  *See Cammer v. Bloom*, 711 F. Supp. 1264, 1286-87 (D.N.J. 1989); *see also In re DVI, Inc. Sec. Litig*., 639 F.3d 623, 633 n.14 (3d Cir. 2011) (recognizing the *Cammer* factors), abrogated on other grounds by *Amgen*, 568 U.S. at 465.  Courts have also considered three additional factors (known as the *Krogman* factors), which are: (1) the market capitalization of the company; (2) the bid-ask spread of the security; and (3) the size of the public float.  *Krogman v. Sterritt*, 202 F.R.D. 467, 478 (N.D. Tx. 2001); *see also DVI*, 639 F.3d at 633 n. 14.  The above factors are an "analytical tool" and not a "checklist."  *Hull v. Global Dig. Sol., Inc*., C.A. No. 16-5153 (FLW), 2018 WL 4380999, at *6 (D.N.J. Sept. 14, 2018).  "[N]o one factor is dispositive, and courts should conduct

'a holistic analysis based on the totality of the evidence presented.'"  *Wilson v. LSB Indus., Inc.*, 15 Civ. 7614 (RA) (GWG), 2018 WL 3913115, at \*9 (S.D.N.Y. Aug. 13, 2018) (quoting *In re Petrobras Sec.*, 862 F.3d 250, 277 (2d Cir. 2017)).  "This [analysis] may, in some cases, include weighing conflicting expert testimony and making factual findings."  *DVI*, 639 F.3d at 633.

Ultimately, it is the Plaintiffs' burden to show that the market for the securities at issue is efficient and they are, therefore, entitled to invoke the fraud-on-the market presumption.  *Roofer's Pension Fund v. Papa*, 333 F.R.D. 66, 73 (D.N.J. 2019).  Plaintiffs, however, have not carried their burden here, because they failed to set out in their opening brief the facts and analysis that would show that the market for Navient's notes is efficient.  Instead, Plaintiffs focused their analysis on the market for Navient's equity securities and then claimed, in conclusory addenda, that the same analysis applied to Navient's notes.  (*See*, *e.g.*, D.I. 105 at 13 (for *Cammer* 1, stating in a single sentence without supporting facts that "Navient debt securities were also actively traded during the Exchange Act Class Period"); *id*. at 14 (for *Cammer* 3, stating in a single sentence with no supporting facts that Navient's notes "traded through numerous market makers"); *id*. at 15-17 (for *Cammer* 5, setting forth two pages of analysis on cause and effect for Navient's equity securities and then concluding in a single sentence with no explanation or indication of the results that their expert "also performed the same or similar analyses with Navient's other publicly traded securities at issue"); *id*. at 17-18 (providing no more than a "*see also*" citation to a portion of the expert's report providing facts and analysis of the *Krogman* factors for Navient's notes)).

Plaintiffs cannot rely on their analysis of Navient's stock to show that the market for Navient's notes is efficient, because the market for stock and debt is not the same.  *Countrywide*, 273 F.R.D. at 615.  For example, "the nature of news that would affect the markets for stock can

be quite different [than] what would affect the markets for bonds." [5] *In re Enron Corp. Sec.*, 529 F. Supp. 2d 644, 747 (S.D. Tex. 2006). In addition, the *Cammer* and *Krogman* factors developed to measure the efficiency of stock markets "do not fit the bond markets well."[6] *Id.* at 748. As a result, courts will not infer that a company's debt securities trade in an efficient market just because the company's common stock trades in an efficient market. *See Schleicher v. Wendt*, No. 1:02-cv-1332-DFH-TAB, 2009 WL 761157, at *6 (S.D. Ind. Mar. 20, 2009) (rejecting plaintiffs' argument that the court can infer an efficient market for the debt securities based on the efficient market for the company's stock securities).

In summary, Plaintiffs' failure to address directly and fully how the *Cammer* and *Krogman* factors apply to Navient's notes leaves the Court unable to conduct the "rigorous . . . analysis" required by the Third Circuit when evaluating market efficiency. *DVI*, 639 F.3d at 633. Because Plaintiffs failed to develop their arguments as to Navient's notes in their opening brief, the arguments are waived. *See Rodriguez-Galvez v. Attorney Gen. of United States*, 811 F. App'x 813,

---

[5]    In bankruptcy, debt securities are paid off before equity securities. *Countrywide*, 273 F.R.D. at 615. In addition, "equity takes any additional profit, but debt's upside is limited by the debt's terms." *Id.* As a result, "equities and debt may react to similar news, but their responses may diverge in degree," because debt is not affected by bad news "[u]ntil the financial situation becomes severe enough that the issuer is likely to default." *Id.*; *see also* D.I. 106-7 ¶¶ 147-50 (Plaintiffs' expert explaining "why a company's stock and bond prices may move in opposite directions in response to new company-specific information").

[6]    As Plaintiffs' expert explains, bonds trade less frequently than stocks because of their different characteristics (*Cammer* 1); analyst reports focus on common stock but not debt (*Cammer* 2); market capitalization considers the number of outstanding shares multiplied by the prevailing share price but not the amount of outstanding debt (*Krogman* 1); bid-ask spreads are reported in stock markets but not bond markets (*Krogman* 2); and public float is the percentage of shares held by the public, as opposed to corporate insiders, but debt is not generally held by corporate insiders (*Krogman* 3). (D.I. 106-7 ¶¶ 166, 180, 192-93, 195). This is not to say that these factors are irrelevant, but that Plaintiffs needed to acknowledge these differences and explain to the Court how they should be adjusted and applied in light of the market for Navient's notes.

814 (3d Cir. 2020) (holding that arguments not developed in the opening brief are waived); *Johnson-Braswell v. Cape Henlopen School Dist.*, C.A. No. 14-1089-RGA, 2015 WL 5724365, at *12 n.9 (D. Del. Sept. 29, 2015) (holding that plaintiff waived arguments that were "cursory and simply incorporate[d] other briefing by reference"). Thus, Plaintiffs cannot rely on a fraud-on-the-market presumption to show reliance as to Navient's notes.

### 2.   *Affiliated Ute* Omission Presumption

In *Affiliated Ute*, the Supreme Court held that reliance may be presumed where plaintiffs' claims are based on material omissions. 406 U.S. at 153–54; *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 192 (3d Cir. 2001). But "no presumption arises in cases of alleged misrepresentations." *Johnston*, 265 F.3d at 192. For cases involving both omissions and misrepresentations, which *Affiliated Ute* "did not address," the court may apply the presumption only where "the offenses can be characterized primarily as omissions." *Johnston*, 265 F.3d at 192.

Here, the offenses alleged in Plaintiffs' second amended complaint can be primarily, if not exclusively, characterized as misrepresentations. According to the complaint, Defendants are liable under § 10(b) and Rule 10b-5 "for knowingly or recklessly *making false or misleading statements* in connection with investors' purchase or sale of Navient stock and notes." (D.I. 59 ¶ 3 (emphasis added)). Count I, the only claim in the complaint for violations of § 10(b) and Rule 10b-5, states that liability is predicated on the fact that Defendants "disseminated or approved the *materially false and misleading statements* specified in ¶¶ 33-35, 50-51, 54, 56, 64-66 above." (*Id.* ¶ 156). Plaintiffs' complaint attaches a chart identifying over thirty specific statements on which the Exchange Act claims are based, but not a single omission.[7] (D.I. 59, App'x at 1-14).

---

[7]    The Court is not including in its analysis Exchange Act claims based on statements related to compliance or the credit facilities, because those claims were dismissed. (D.I. 59, App'x at 15-21).

The only time Plaintiffs' complaint alleges that Defendants "failed to disclose" certain information is to explain why the affirmative misstatements satisfy the falsity element required under the Private Securities Litigation Reform Act of 1995 ("PSLRA").  (*See* D.I. 75 at 6 (explaining that the PSLRA requires plaintiff to "plead with particularity the 'the reasons why' the statements were false or misleading when made"); D.I. 59 ¶ 52 (stating that "The statements recounted in ¶¶ 50-51 were false or misleading when made because Defendants failed to disclose that Navient was regularly and indiscriminately placing borrowers into forbearance, thereby masking the true level of risk in the Company's loan portfolios and artificially depressing the number of delinquencies, defaults, and charge-offs.")).  Indeed, the Court relied on these very allegations to hold on a motion to dismiss that Plaintiffs adequately pleaded falsity as to Defendants' statements on forbearance and loan loss provisions.[8]  (*See* D.I. 75 at 14, 20-22).

The allegations explaining why Defendants' statements were false do not turn Plaintiffs' misrepresentation claims into claims based on omissions.  As the Third Circuit explained, "'any fraudulent scheme requires some degree of concealment, both of the truth and of the scheme itself,' and . . . the mere fact of this concealment cannot, and should not, transform a misrepresentation into an omission."  *Johnston*, 265 F.3d at 193 (quoting *Joseph v. Wiles*, 223 F.3d 1155, 1163 (10th Cir. 2000)).  Stated differently, a "claim should not be transformed into an omission simply because the defendants failed to disclose that the allegedly misleading fact was untrue."  *Johnston*, 265 F.3d at 193.  "To do otherwise would permit the *Affiliated Ute* presumption to swallow the reliance requirement almost completely."[9]  *Id*.  Because Plaintiffs' Exchange Act claims may be

---

[8]   Plaintiffs' misinterpret the Court's opinion on the motion to dismiss as sustaining claims based on omissions.  (D.I. 105 at 18).

[9]   Plaintiffs rely on *Dynex Capital* for the proposition that misrepresentation claims are actually omission claims where defendants attributed poor performance in loss reserves to market conditions and failed to disclose that the poor performance was actually caused by

primarily characterized as misrepresentations, Plaintiffs are not entitled to rely on the *Affiliated Ute* presumption to establish reliance.

Because neither the *Basic* presumption nor the *Affiliated Ute* presumption is available to Plaintiffs, common questions of law or fact will not predominate over individual issues, and Plaintiffs cannot show that an Exchange Act class including Navient's notes can be maintained under Rule 23(b)(3).  Accordingly, the Court will exclude the Navient notes from the Exchange Act class certified.

## IV.     <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' motion for class certification, appointment of class representatives, and appointment of class counsel (D.I. 104) is granted-in-part and denied-in-part. The class certified for claims based on the Exchange Act will not include persons and entities who purchased or otherwise acquired Navient's notes.  Plaintiffs' motion is granted in all other respects. An appropriate order will be entered.

---

reckless underwriting and origination practices.  *In re Dynex Capital, Inc. Sec. Litig.*, No. 05 Civ. 1897 (HB), 2009 WL 3380621, at *8 (S.D.N.Y. Oct. 19, 2009).  *Dynex Capital* is neither binding on this court not persuasive, because it is contrary to the Third Circuit's pronouncements in *Johnston*.